1  CAROLINE McINTYRE, SBN 159005, cmcintyre@@be-law.com
   MELINDA M. MORTON, SBN 209373, mmorton@be-law.com
2  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
3  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
4  Facsimile:  (408) 297-6000

5  DANIEL P. ALBERS, Admitted *Pro Hac Vice*
   PAUL B. HUNT, Admitted *Pro Hac Vice*
6  JOHN P. WAPPEL, Admitted *Pro Hac Vice*
   BARNES & THORNBURG LLP
7  One North Wacker Drive, Suite 4400
   Chicago, IL 60606-283
8  Telephone:  (312) 357-1313
   Facsimile:  (312) 759-5646
9

10 Attorneys for Defendant
   ROCHE DIAGNOSTICS CORPORATION

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15  SAN FRANCISCO TECHNOLOGY, Inc.          Case No. CV10-00966

16                          Plaintiff,
                                            **DEFENDANT ROCHE DIAGNOSTICS**
17      vs.                                 **CORP.'S NOTICE OF MOTION AND**
                                            **MOTION TO SEVER AND DISMISS, OR,**
18  THE GLAD PRODUCTS COMPANY, BAJER        **IN THE ALTERNATIVE, MOTION TO**
    DESIGN & MARKETING INC., BAYER          **TRANSFER OR DISMISS OR STAY,**
19  CORPORATION, BRIGHT IMAGE               **MEMORANDUM OF POINTS AND**
    CORPORATION, CHURCH & DWIGHT CO.        **AUTHORITIES**
20  INC., COLGATE-PALMOLIVE COMPANY,
    COMBE INCORPORATED, THE DIAL
21  CORPORTION, EXERGEN CORPORATION,        Date:  June 18, 20010
    GLAXOSMITHKLINE LLC, HI-TECH            Time:  9:00 a.m.
22  PHARMACAL CO. INC., JOHNSON             Courtroom 3, Fifth Floor
    PRODUCTS COMPANY INC., MAYBELLINE       Hon. Jeremy Fogel
23  LLC, MCNEIL-PPC INC., MEDTECH
    PRODUCTS INC., PLAYTEX PRODUCTS INC.,
24  RECKITT BENCKISER INC., ROCHE
    DIAGNOSTICS CORPORTION, SOFTSHEEN-
25  CARSON LLC, SUN PRODUCTS
    CORPORATION, SUNSTAR AMERICAS INC.
26
                            Defendants.
27

28

# TABLE OF CONTENTS

I.      RELEVANT FACTS ................................................................................................. 2

II.     ARGUMENT ........................................................................................................... 3

    A.   The Claims Against Roche Diagnostics Corp. Should Be Severed And Dismissed In Favor Of A Previously Filed Action.................................................................................. 3

    B.   The Present Action Should Be Transferred To The United States District Court For The Southern District Of Indiana Pursuant To 28 U.S.C. § 1404(a).......................................... 4

    C.   SFT Lacks Standing Because It Failed To Allege Concrete Injury. ..................................... 6

        1. SFT Fails To Plead Injury In Fact................................................................................. 8

        2. The Court Should Dismiss SFT's Claims Against RDC Without Leave To Amend. ..... 10

    D.   Plaintiff Fails To State A Claim Upon Which Relief May Be Granted. ............................. 11

        1. SFT Fails To Plead Intent To Deceive With Particularity As Required By Rule 9(b). .. 12

        2. SFT Fails To State A Claim Under The Relaxed Pleading Standards Of Rule 8(a)....... 13

    E.   The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(7) Because Roche Diagnostics Corporation Is Not The Proper Party To The Action. .................................. 15

    F.   The Court Should Stay The Present Action Pending Decision By The Federal Circuit. ..... 16

III.    CONCLUSION .................................................................................................. 18

ROCHE'S NOTICE AND MOTION TO SEVER AND DISMISS, ETC.
Case No. CV10-00966

TABLE OF AUTHORITIES

Federal Cases

Allen v. Wright
  468 U.S. 737 (1984) ................................................................................................. 8

Ardco Inc. v. Page, Ricker, Felson Marketing, Inc.
  No. 92 C 2927, 1992 WL 246862 (N.D. Ill. Sept. 23, 1992) ............................................ 6

Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.
  289 F. Supp. 2d 986 (N.D.Ill. 2003) ...................................................................... 13

Ashcroft v. Iqbal
  129 S.Ct. 1937 (2009) ................................................................................. 11, 13, 14

Bell Atl. Corp. v. Twombly
  550 U.S. 544 (2007) ......................................................................................... 11, 13

Blue Chip Stamps v. Manor Drug Stores
  421 U.S. 723 (1975) ............................................................................................... 13

Church of Scientology of California v. U.S. Dep't of the Army
  611 F.2d 738 (9th Cir. 1979) .................................................................................... 3

Clontech Lab., Inc. v. Invitrogen Corp.
  406 F.3d 1347 (Fed. Cir. 2005) .......................................................................... 11, 12

Cook, Perkiss and Liehe, Inc., v. N. Cal. Collection Svc., Inc.
  911 F.2d 242 (9th Cir.1990) ................................................................................... 10

DiLeo v. Ernst & Young
  901 F.2d 624 (7th Cir. 1990) ................................................................................... 12

Doran v. 7-Eleven, Inc.
  524 F.3d 1034 (9th Cir. 2008) ................................................................................... 7

Dumas v. Major League Baseball Props., Inc.
  52 F. Supp. 2d 1183 (S.D. Cal. 1999) ................................................................... 3, 4

Dura Pharmaceuticals, Inc. v. Broudo
  544 U.S. 336 (2005) ............................................................................................... 13

Exergen Corp. v. Wal-Mart Stores, Inc.
  575 F.3d 1312 (Fed. Cir. 2009) ............................................................................... 12

FEC v. Akins
  524 U.S. 11 (1998) ................................................................................................... 7

FMC Corp. v. Control Solutions, Inc.
  369 F. Supp. 2d 539 (E.D. Pa 2005) ................................................................. 14, 15

*Forest Group, Inc. v. Bon Tool Co.*
    590 F.3d 1295 (Fed. Cir. 2009) ........................................................................ 4

*Havoco of America, Ltd. v. Shell Oil Co.*
    626 F.2d 549 (7th Cir.1980) .......................................................................... 11

*Horne v. Flores*
    129 S.Ct. 2579 (2009) .............................................................................. 6, 7

*Inventorprise, Inc. v. Target Corp.*
    No. 09-cv-00380, 2009 WL 3644076 (N.D.N.Y. Nov. 2, 2009) ................................ 12, 16

*Juniper Networks v. Shipley*
    No. C 09-0696 SBA, 2009 WL 1381873 (N.D. Cal. May 14, 2009)................................ 12

*Jones v. GNC Franchising, Inc.*
    211 F.3d 495 (9th Cir. 2000)........................................................................... 4

*Lance v. Coffman*
    549 U.S. 437 (2007) .................................................................................. 7

*Lujan v. Hughes Aircraft*
    243 F.3d 1181 (9th Cir. 2001) ........................................................................ 4

No. C.A. 09-262-JJF, 2010 WL 545896 (D. Del. Feb. 16, 2010) ........................................ 13, 14

*Pacesetter Systems, Inc. v. Medtronic, Inc.*
    678 F.2d 93 (9th Cir. 1982)............................................................................ 3

*Pequignot v. Solo Cup Co.*
    540 F. Supp. 2d 649 (E.D. Va. 2008)............................................................. 14, 15

*Pequignot v. Solo Cup Co.*
    640 F. Supp. 2d 714 (E.D. Va. 2009).......................................................... 8, 9, 10

*Research in Motion, Ltd. v. Visto Corp.*
    545 F. Supp. 2d 1011 (N.D. Cal 2008) ............................................................. 16

*Rutman Wine Co. v. E&J Gallo Winery*
    829 F. 2d 729 (9th Cir. 1987)........................................................................ 11

*San Francisco Tech., Inc. v. Adobe Sys., Inc.*
    No. 09-cv-6083 RS, 2010 WL 1463571 (N.D. Cal. Apr. 13, 2010) ......................... 3, 17, 18

*Summers v. Earth Island Institute*
    129 S.Ct. 1142 (2009) ................................................................................ 7

*U.S. ex rel. Adrian v. Regents of University of California*
    No. C 99-3864 THE, 2002 WL 334915 (N.D.Cal. Feb. 25, 2002).................................. 5

*U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*
    318 F.3d 214 (D.C. Cir. 2003) ....................................................................... 4

*U.S. ex rel. Kennedy v. Adventis Pharm., Inc.*
    512 F. Supp. 2d 1158 (N.D. Ill. 2007) .............................................................. 12

*U.S. ex rel. LaValley v. First Nat'l Bank* of Boston
 625 F. Supp. 591 (D.N.H. 1985) ...................................................................... 5

*U.S. ex rel. Penizotto v. Bates East Corp.*
 No. CIV. A 94-3626, 1996 WL 417172 (E.D.Pa. Jul. 18, 1996) ......................... 5

*U.S. ex Roop v. Arkray USA, Inc.*
 No. 1:04 CV87-M-0, 2007 WL 844691 (N.D. Miss. Mar. 19, 2007) ................ 5

*Valley Forge Christian College v. Americans United for Separation of Church and State*
 454 U.S. 464 (1982) ......................................................................................... 8

*Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*
 529 U.S. 765 (2000) ................................................................................ 6, 9, 10

*Vess v. Ciba-Geigy Corp. USA*
 317 F.3d 1097 (9th Cir. 2003) ....................................................................... 12

*Walker v. Progressive Cas. Ins. Co.*
 No. 03-c-656R, 2003 WL 21056704 (W.D. Wash. 2003) ............................. 3, 4

*Warth v. Seldin*
 422 U.S. 490 (1975) ......................................................................................... 6

*Wilson v. Singer Mfg. Co.*
 30 F. Cas. 223 (N.D. Ill. 1879), aff'd 12 F. 57 (C.C.N.D. Ill. 1882) ................ 14

Federal Statutes

16 U.S.C. § 1540(g) ........................................................................................... 7

28 U.S.C. § 1391(b)(1) ...................................................................................... 5

28 U.S.C. § 1404(a) ......................................................................................... i4

35 U.S.C. § 292 ....................................................................................... 2, 3, 4

35 U.S.C. § 292(b) ......................................................................................... 10

Federal Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 18

Fed. R. Civ. P. 12(b)(6) ................................................................................... 18

Fed. R. Civ. P. 12(b)(7) ......................................................................... 15, 16, 18

Fed. R. Civ. P. 19 ........................................................................................... 16

Fed. R. Civ. P. 20(a)(2) ........................................................................................... 3

Fed. R. Civ. P. 21 .................................................................................................... 3

Fed. R. Civ. P. 8(a)(2) ...................................................................................... 13, 14

Fed. R. Civ. P. 9(b) ................................................................................................ 12

**NOTICE OF MOTION**

PLEASE TAKE NOTICE, that on June 18, 2010 at 9:00 a.m., before the Honorable Judge Jeremy Fogel, at the United States District Court for the Northern District of California, 280 S. First Street, San Jose, California 95113, Defendant Roche Diagnostics Corp. ("RDC") will move the Court to sever the clams against RDC and to dismiss the claims in favor of a previously filed action pursuant to the first to file rule, or in the alternative to transfer venue to the Southern District of Indiana, or in the alternative, to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and/or 12(b)(7), or in the alternative to stay the case until the United States Court of Appeals for the Federal Circuit issues a decision in *Stauffer v. Brooks Bros.*, *Inc.*, Appeal Nos. 2009-1428, 2009-1430, 2009-1453 ("*Brooks Bros.* appeal"), which has a direct bearing on Plaintiff's standing in this case, and *Pequignot v. Solo Cup Co.*, Appeal No. 2009-1547, which is likely to bear on RDC's motion to dismiss for failure to state a claim.  This Motion is based on the Memorandum of Points and Authorities herein, the pleadings and papers filed in this action, and argument and evidence to be presented at the hearing on this Motion.

<b>CONCISE STATEMENT OF RELIEF SOUGHT</b>

RDC hereby requests the Court to sever the claims against RDC and to dismiss the claims in favor of a previously filed action, or alternatively to transfer to the Southern District of Indiana, or alternatively to dismiss the claims against RDC, or in the alternative to stay the case until the Federal Circuit rules in the *Brooks Bros*. appeal.

<b>STATEMENT OF THE ISSUES TO BE DECIDED</b>

1.      Whether the claims against RDC should be severed, because the defendants in the present action are improperly joined, and dismissed in favor of a previously filed action in the Northern District of Illinois.

2.      Alternatively, whether the claims against RDC should be transferred to the Southern District of Indiana for the convenience of the parties and in the interests of justice.

3.      Alternatively, whether the claims against RDC should be dismissed pursuant to Rule 12(b)(1) for lack of standing, and/or pursuant to Rule 12(b)(6) for failure to state a claim, and/or pursuant to Rule 12(b)(7) for failure to name the proper party.

4.     Alternatively, whether a stay pending a decision by the Federal Circuit in *Stauffer v. Brooks Bros.* and *Pequignot v. Solo Cup Co.* will result in judicial economy by conserving the resources of the Court and the parties in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     RELEVANT FACTS

Plaintiff San Francisco Technology, Inc. ("SFT") alleges that RDC and twenty-one other defendants violated 35 U.S.C. § 292 by falsely marking unrelated products as patented with intent to deceive the public.  SFT alleges that RDC marked its ACCU-CHEK® Softclix lancets with expired U.S. Patent No. 4,924,879 ("the '879 Patent").  SFT alleges jurisdiction and venue are proper in this judicial district based on sales of the allegedly mismarked product within the judicial district and/or a stream of commerce theory.  Compl. ¶44.  SFT's claim against RDC consists of the base allegation that RDC marked the ACCU-CHEK® Softclix lancets with the '879 Patent (Compl. ¶ 122), and that "upon information and belief" Roche made the decision to mark its products with the '879 Patent after the patent had expired (Compl. ¶ 123), and that "upon information and belief" RDC did so with intent to deceive the public (Compl. ¶ 124).  SFT makes no other factual allegations against RDC.

Before SFT filed its complaint, on February 23, 2010, David O'Neill filed a complaint against RDC in the United States District Court for the Northern District of Illinois also alleging false marking with respect to the same ACCU-CHEK® Softclix lancets and the '879 Patent, among other products and patents.  Wappel Decl. Ex. A, Complaint, D.I. 1, 10-cv-01205 (N.D. Ill. Feb. 23, 2010).  In that case, RDC has similarly filed a motion requesting that that case be transferred, or alternatively dismissed, or stayed.  Wappel Decl. Ex. B (D.I. 20, filed April 30, 2010).

RDC does not mark the ACCU-CHEK® Softclix Lancets.  The ACCU-CHEK® Softclix Lancets are manufactured for Roche Diagnostics GmbH ("RDG"), which then sells these products to Roche Diagnostics Operations, Inc. ("RDO"), which then sells the products to Defendant RDC.  Young Decl. ¶ 7.

## II.     ARGUMENT

### A.     The Claims Against Roche Diagnostics Corp. Should Be Severed And Dismissed In Favor Of A Previously Filed Action.

Severance of the claims against RDC and dismissal in favor of the previously filed action is appropriate in this case.  Multiple defendants may be joined in a single action only if (1) the claim arises out of the same transaction or occurrence, and (2) there is a common question of law or fact common to all defendants.  Fed. R. Civ. P. 20(a)(2).  The Court may properly drop or sever claims against a misjoined party on motion or *sua sponte*.  Fed. R. Civ. P. 21.

Plaintiff filed the present action against 21 separate defendants alleging each defendant marked its products with different expired patents in violation of 35 U.S.C. § 292.  Because each of the 21 defendants in this case are alleged to have marked different products with different patent numbers the claims against the defendants do not arise out of the same transaction or occurrence and "there is simply no basis to join these [21] defendants in a single suit."  *San Francisco Tech., Inc. v. Adobe Sys., Inc.*, No. 09-cv-6083 RS, 2010 WL 1463571 at *2 (N.D. Cal. Apr. 13, 2010) (also noting that "[a]ny suggestion that defendants are jointly or severably liable would be even less viable.").  Because the claims alleged against RDC did not arise out of the same transaction or occurrence as the claims alleged against the other defendants, the Court should sever the claims against RDC.

The first to file rule "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction when a complaint involving the same parties and issues has already been filed in another district."  *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  The first to file rule "serves the purpose of promoting efficiency well and should not be disregarded lightly."  *Church of Scientology of California v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).  In applying the first to file rule, the parties need only be similar or have "substantial overlap;" the parties need not be identical.  *Walker v. Progressive Cas. Ins. Co.*, No. 03-c-656R, 2003 WL 21056704 at *2 (W.D. Wash. 2003); *Dumas v. Major League Baseball Props., Inc.*, 52 F. Supp. 2d 1183, 1189 (S.D. Cal. 1999) *vacated on other grounds*, 104 F. Supp. 2d 1220 (S.D. Cal. 2000).  Further, the "issues in the two actions need not be identical for

the purposes of the first to file rule but must only be substantially similar."  *Walker*, 2003 WL

21056704 at *3; *Dumas*, 52 F. Supp. 2d at 1193.

The present action should be dismissed pursuant to the first to file rule because SFT

brought the present *qui tam* action under 35 U.S.C. § 292 to recover civil fines alleging RDC

falsely marked its ACCU-CHEK® Softclix lancets with the expired '879 Patent (Compl., ¶¶ 122-

124), just as O'Neill did in the prior action in Illinois (Wappel Decl. Ex. A, ¶¶ 1-2).  There is

complete overlap between the parties because Section 292 permitted both SFT and O'Neill to

bring their claims on behalf of the United States.  *See Forest Group, Inc. v. Bon Tool Co.*, 590

F.3d 1295, 1303-04 (Fed. Cir. 2009).  Further, the issues in the two cases are also identical—the

marking of the ACCU-CHEK® Softclix lancets with the '879 Patent.  Thus, the claims against

RDC in this action should be dismissed.  *See U.S. ex rel. Hampton v. Columbia/HCA Healthcare

Corp.*, 318 F.3d 214, 217-218 (D.C. Cir. 2003) citing *U.S. ex rel. Lujan v. Hughes Aircraft*, 243

F.3d 1181, 1188-89 (9th Cir. 2001) (affirming dismissal of second-filed action under the False

Claims Act based on same material elements of an earlier filed action).

**B.      The Present Action Should Be Transferred To The United States District
Court For The Southern District Of Indiana Pursuant To 28 U.S.C. § 1404(a).**

Alternatively, if the Court declines to dismiss the claims against RDC, the claims should

be transferred to the Southern District of Indiana for the convenience of the parties.  "For the

convenience of the parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district court or division where it might have been brought."  28 U.S.C. §

1404(a), *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Because the

Southern District of Indiana is a more convenient judicial district and the present action could

have been brought there against RDC, transfer is appropriate.  RDC has requested that the case

filed by O'Neill, discussed above, also be transferred to the Southern District of Indiana pursuant

to 28 U.S.C. § 1404(a).  Wappel Decl., Ex. B.

Venue is proper in both the Northern District of California and the Southern District of

Indiana.  SFT bases its allegations of jurisdiction and venue on sales of products within the district

and/or a stream of commerce theory.  Compl. ¶ 44.  SFT also correctly alleges that RDC is an

Indiana business entity with its principal place of business in Indianapolis, Indiana (Compl. ¶ 20), which is within the Southern District of Indiana. Venue is also proper in "a judicial district where any defendant resides" and in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1), (2). Because RDC is headquartered in Indianapolis, RDC resides in the Southern District of Indiana, and a "substantial part of the events or omissions giving rise to the claim occurred" there, RDC is subject to personal jurisdiction there, and RDC is found there. Thus, the present case could have been originally brought in the Southern District of Indiana.

SFT chose to file the present action in its home forum. However, in a *qui tam* action, such as this, courts have held that Plaintiff's choice of forum is entitled to little weight because the United States is the real party in interest. *U.S. ex Roop v. Arkray USA, Inc.*, No. 1:04 CV87-M-0, 2007 WL 844691, at *2 (N.D. Miss. Mar. 19, 2007) citing *U.S. ex rel. Adrian v. Regents of University of California*, No. C 99-3864 THE, 2002 WL 334915 (N.D.Cal. Feb. 25, 2002) ("a plaintiff's choice of forum is not given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government."); *U.S. ex rel. LaValley v. First Nat'l Bank of Boston,* 625 F. Supp. 591, 594 (D.N.H. 1985); *U.S. ex rel. Penizotto v. Bates East Corp.,* No. CIV. A 94-3626, 1996 WL 417172 (E.D.Pa. Jul. 18, 1996).

None of the events giving rise to the present cause of action occurred in California or in the judicial district of the Northern District of California. Any decisions regarding packaging and marking of the subject patent numbers were made by Roche Diagnostic Operations, Inc. in Indianapolis.[1] See Young Decl. ¶¶ 5, 6, 9. Access to proof, convenience of the witnesses, and convenience of the parties, are all located in the Southern District of Indiana and weigh in favor of transfer. All documents and witnesses are located in Indianapolis at RDC's headquarters. Young Decl. ¶ 6. Further, all potential witnesses for RDC and potential witnesses for Roche Diagnostic Operations, Inc. are located in Indianapolis, Indiana. Young Decl. ¶ 5. These witnesses will testify about packaging, labeling, advertising, and sales of the products at issue by RDC and

1   Roche Diagnostic Operations, Inc.  Young Decl. ¶ 5.  These subjects are directly relevant to RDC

2   and Roche Diagnostic Operations, Inc.'s intent regarding marking, which is the fundamental

3   element of this case.  RDC is not aware of any witnesses or other evidence located in the Northern

4   District of California.

5          Moreover, Plaintiff's individual convenience does not outweigh the collective convenience

6   of the parties.  *See Ardco Inc. v. Page, Ricker, Felson Marketing, Inc.*, No. 92 C 2927, 1992 WL

7   246862, at *6 (N.D. Ill. Sept. 23, 1992) (transfer from plaintiff's home forum was appropriate

8   because all of defendant's activities occurred in transferee forum and documents and witnesses

9   were located there).  Therefore, except for Plaintiff's choice of forum, all factors including the

10  situs of material events, access to sources of proof, convenience of the witnesses and convenience

11  of the parties weigh in favor of transfer to the Southern District of Indiana.

12         As any material events took place in Indianapolis, the events giving rise to the present

13  action are related to Indianapolis and it would be more desirable to have the controversy resolved

14  there.  Thus, the interests of justice weigh in favor of transfer.

15         **C.      SFT Lacks Standing Because It Failed To Allege Concrete Injury.**

16         SFT has failed to allege concrete injury—either to itself or to the United States—and

17  therefore lacks standing to maintain the present action.  Plaintiff has the burden "to allege facts

18  demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise

19  of the court's remedial power."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

20         Standing is a jurisdictional requirement that a plaintiff—including a *qui tam* relator—must

21  satisfy to maintain his suit under Article III of the Constitution.  *Vermont Agency of Natural*

22  *Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).  "To establish standing, a plaintiff

23  must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to

24  the defendant's challenged action; and redressable by a favorable ruling."  *Horne v. Flores*, 129

25  S.Ct. 2579, 2592 (2009).  "[T]he critical question is whether [the plaintiff] has alleged such a

26

27  [1] As discussed below, RDC is not the party responsible for marking the Accu-Chek® Softclix
    lancets at issue.

28

personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court

jurisdiction." *Id.* (emphasis in original, internal quotation omitted).  "[T]he requirement of injury

in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v.*

*Earth Island Institute*, 129 S.Ct. 1142, 1151 (2009).  Speculative claims without a "concrete and

particularized" injury in fact are insufficient to confer standing.  *Doran v. 7-Eleven, Inc.*, 524 F.3d

1034, 1050 (9th Cir. 2008).

Section 292 assigns "'to any person' the authority to bring suit to vindicate the cognizable

injuries incurred on the public or the United States through violation of its provisions." *Brooks*

*Brothers, Inc.*, 615 F. Supp. 2d at 254.  However, under section 292, allegations of improper

patent marking without concrete injury "neither alleges a violation of section 292 nor pleads an

injury in fact to the sovereign interest of the United States assignable to a *qui tam* plaintiff." *Id.* at

n.5.

The Supreme Court has held on numerous occasions that a private party cannot rely on an

abstract interest in seeing that the laws are obeyed to confer Article III standing. *Lance v.*

*Coffman*, 549 U.S. 437, 442 (2007) ("The only injury plaintiffs allege is that the law … has not

been followed.  This injury is precisely the kind of undifferentiated, generalized grievance … that

we have refused to countenance in the past."); *FEC v. Akins*, 524 U.S. 11, 24 (1998) (An

"abstract" harm such as "injury to the interest in seeing that the law is obeyed … deprives the case

of the concrete specificity" necessary for standing); *Lujan v. Defenders of Wildlife*, 504 U.S. at

555, 573-74 (1992) ("[H]arm to … every citizen's interest in the proper application of the

Constitution and laws … does not state an Article III case or controversy.").  Here, Plaintiff cannot

privately exercise the government's duty to ensure the laws are faithfully obeyed.  *See Brooks.*

*Bros.*, 615 F. Supp. 2d at 254 n.5 ("[T]he Court doubts that the Government's interest in seeing its

laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam*

plaintiff's standing.")

The Supreme Court explained this principle when it addressed a "citizen-suit" provision of

the Endangered Species Act, 16 U.S.C. § 1540(g), which provided that "any person may

commence a civil suit on his own behalf … to enjoin any person … who is alleged to be in

violation of any provision of this chapter." *Lujan*, 504 U.S. at 571-72.  In holding that the plaintiff

lacked Article III standing, the Supreme Court found that Article III does not permit conversion of

> the public interest in proper administration of the laws . . . into an individual right by a statute that denominates it as such, and that permits all citizens . . . to sue. If the concrete injury requirement has the separation-of-powers significance we have always said, the answer must be obvious: To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to 'take Care that the Laws be faithfully executed.' Art. II. § 3.

*Id.* at 576-77.  *See also Allen v. Wright*, 468 U.S. 737, 761 (1984) ("The Constitution … assigns to

the Executive Branch, and not to the Judicial Branch, the duty to 'take Care that the Laws be

faithfully executed.' U.S. Const., Art. II, § 3. We could not recognize respondents' standing in this

case without running afoul of that structural principle."); *Valley Forge Christian College v.*

*Americans United for Separation of Church and State*, 454 U.S. 464, 471-76 (1982) (explaining

that Article III's "case or controversy" requirement circumscribes Judicial Branch powers under

separation of powers doctrine).

### 1.    SFT Fails To Plead Injury In Fact.

Plaintiff must plead an assignable injury in fact that has been suffered by the public or by

the United States.  *Brooks Bros.*, 615 F. Supp. 2d at 254.  Plaintiff has failed to do so.  "In

particular, the [C]omplaint fails to allege with any specificity an actual injury to any individual

competitor, to the market . . ., or to any aspect of the United States economy."  *Id.* at 255.  *But see*

*Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, 720 (E.D. Va. 2009).

In *Brooks Brothers*, the court found that allegations far more extensive than those alleged

here failed to allege actual or imminent injury, and therefore were insufficient to confer standing.

*Id.*  In *Brooks Brothers*, the plaintiff alleged that

> Brooks Brothers has "wrongfully quelled competition with respect to such bow tie products." (*Id.* ¶ 129.)  In particular, [the plaintiff] alleges Brooks Brothers has "wrongfully and illegally advertis[ed] patent monopolies that [defendants] do not possess," thereby causing harm to the economy of the United States" because the embroidered mark, "has the potential to, discourage or deter" potential competitors "from commercializing a competing bow tie." (*Id.* ¶ 128, 130.)  The complaint makes those allegations largely on "information and belief" and provides no further factual allegations in support of that alleged harm. It also contends, in similarly unsupported fashion, that, as a result, defendants "have

1   likely benefitted in at least maintaining their considerable market share with
    respect to the herein-described bow tie products in the high-end haberdashery
2   marketplace." (*Id.* ¶¶ 129-30.)

3   *Brooks Brothers*, 615 F.Supp.2d at 252.  In granting the defendant's motion to dismiss, the court

4   found that these conclusory allegations pled nothing more than "conjectural or hypothetical" harm

5   insufficient to confer standing.  *Id.* at 255.  Consequently, the plaintiff failed to allege a claim by

6   the United States "that could be assigned to him as a *qui tam* plaintiff or be vindicated through . . .

7   litigation."  *Id.*

8          Here, SFT's allegations against RDC are limited to three conclusory paragraphs (Compl.

9   ¶¶122-124), all made upon information and belief, without any factual support.  These are

10  speculative and devoid of any allegation of injury suffered either by SFT or by the United States.

11  In *Brooks Bros.*, the plaintiff made at least speculative allegations of injury, which ultimately

12  failed to provide standing.  *Brooks Brothers*, 615 F.Supp.2d at 255 ("That some competitor might

13  somehow be injured at some point, or that some component of the United States economy might

14  suffer harm through defendants' conduct, is purely speculative and plainly insufficient to support

15  standing.").  SFT's conclusory allegations are insufficient to allege even speculative harm of the

16  kind properly rejected in *Brooks Bros.*

17         In contrast to *Brooks Bros.*, the court in *Pequignot v. Solo Cup* erroneously allowed the

18  plaintiff to pursue his *qui tam* action without deciding whether the United States government had

19  suffered any injury that could be assigned.  640 F. Supp.2d at 720-724.  The court declined to

20  distinguish between assignment of the government's sovereign interest in seeing its laws obeyed

21  and a proprietary interest in obtaining compensation for an injury suffered by the government,

22  erroneously stating that the Supreme Court *Vermont Agency* made no such distinction.  *Id.* at 724

23  n.15.

24         In fact, *Vermont Agency* did distinguish between sovereign and proprietary interests by

25  separately discussing "the injury to its sovereignty arising from violation of its laws (which

26  suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from

27  the alleged fraud." 529 U.S. at 771 ("The interest must consist of obtaining compensation for, or

28  preventing the violation of a legally protectable right," and not merely be a "byproduct" of the

suit.).  The Supreme Court held only that the proprietary injury could be assigned to a private

party for Article III standing purposes. *See id.* at 773 (holding that False Claims Act "effect[ed] a

partial assignment of the Government's <u>damages claim</u>") (emphasis added).  The Supreme Court

<u>did not</u> hold that a sovereign injury, *i.e.*, the source of the government's ability to enforce its

criminal laws, could be assigned to a private party for Article III standing purposes.  Here, SFT

alleges no injury in fact that can be assigned by the United States. Unlike the False Claims Act

where a *qui tam* plaintiff is permitted to bring suit to recover money paid by the government

resulting from fraud, any fine that SFT could recover here would not accrue until the conclusion of

this litigation, and therefore would be merely a "byproduct" of the present suit.[2]

## 2.    The Court Should Dismiss SFT's Claims Against RDC Without Leave To Amend.

Leave to file an amended complaint should be denied where jurisdictional defects cannot

be cured.  *Cook, Perkiss and Liehe, Inc., v. N. Cal. Collection Svc., Inc.,* 911 F.2d 242 (9th

Cir.1990).  Dismissal without leave to amend is proper here because Plaintiff did not, and cannot,

identify any concrete, particularized harm to itself, the public, or the United States that would

confer Article III standing.  SFT cannot plead a personal injury in fact.  SFT's allegations do not

suggest that there has ever been (or ever will be) any quantifiable injury to the public or the United

States economy caused by RDC's alleged conduct. Nor did SFT allege that any actual competitor

of RDC (or any other entity or person for that matter) has suffered or will suffer any harm due to

RDC's alleged conduct.

For the reasons discussed above, SFT does not, and cannot, allege that anyone has been

injured by RDC's patent marking.  Even if SFT were to allege in response to this Motion that it has

Article III standing because laws have been violated or because it can privately exercise

---

[2] Further, in *Solo Cup*, the defendant alleged that 35 U.S.C. § 292(b) lacks sufficient procedural safeguards, and on that ground, it violated Article II. *See* 640 F. Supp. 2d at 720-28. Here, RDC is not raising an Article II challenge to the statute.  Rather, RDC points out that Plaintiff must satisfy the basic Article III standing requirement of any civil litigant or any *qui tam* relator.  *Lujan*, 504 U.S. at 566, *Vermont Agency*, 529 U.S. at 771.  Because Plaintiff has failed to do so here, Plaintiff lacks Article III standing and the Complaint should be dismissed.

1  the government's duty to see that the laws are faithfully obeyed—which SFT did not allege in the

2  Complaint—such allegations fail as a matter of law in view of the ample Supreme Court

3  jurisprudence discussed herein.

4       **D.**     **Plaintiff Fails To State A Claim Upon Which Relief May Be Granted.**

5       "The purpose of [Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency

6  of complaints." *Rutman Wine Co. v. E&J Gallo Winery*, 829 F. 2d 729, 738 (9th Cir. 1987). "[I]f

7  the allegations of the complaint fail to establish the requisite elements of the cause of action, . . .

8  requiring costly and time consuming discovery and trial work would represent an abdication of

9  [the court's] responsibility." *Id. quoting Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549,

10  553 (7th Cir.1980). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

11  need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

12  to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

13  cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

14  quotations omitted). "Factual allegations must be enough to raise a right to relief above the

15  speculative level." *Id.* In other words, to survive a motion to dismiss, a complaint must contain

16  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

17  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted). As the Supreme

18  Court made clear in *Twombly*, "on a motion to dismiss, courts 'are not bound to accept as true a

19  legal conclusion couched as a factual allegation' [within the complaint]." *Twombly*, 550 U.S. at

20  555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

21       The elements of a claim for false patent marking are: "(1) a marking importing that an

22  object is patented (2) falsely affixed to (3) an unpatented article (4) with intent to deceive the

23  public." *Clontech Lab., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1351 (Fed. Cir. 2005) (internal

24  quotations omitted). Plaintiff bears the burden of establishing "that the party accused of false

25  marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a

26  patent)." *Id.* at 1352-53. In the context of section 292, "[i]ntent to deceive is a state of mind

27  arising when a party acts with sufficient knowledge that what it is saying is not so and

28  consequently that the recipient of its saying will be misled into thinking the statement is true." *Id.*

at 1352.  Applying these standards, SFT does not state a claim against RDC upon which relief can be granted.

### 1.   SFT Fails To Plead Intent To Deceive With Particularity As Required By Rule 9(b).

SFT failed to allege sufficient facts that RDC marked its ACCU-CHEK® Softclix lancets with the '879 Patent with intent to deceive the public.  "The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Juniper Networks v. Shipley*, No. C 09-0696 SBA, 2009 WL 1381873 at *4 (N.D. Cal. May 14, 2009).  *See also Inventorprise, Inc. v. Target Corp.*, No. 09-cv-00380, 2009 WL 3644076 at *7 n.16 (N.D.N.Y. Nov. 2, 2009) *quoting Juniper Networks; U.S. ex rel. Kennedy v. Adventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007) (Rule 9(b) requires *qui tam* plaintiff to plead with particularity).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  *See also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (Rule 9(b) particularity "means the who, what, when, where, and how" in the context of inequitable conduct intent to deceive) quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In *Juniper Networks*, the court ruled that the plaintiff's conclusory allegations, made upon information and belief, that the defendant "'knew' his reference to the patents was 'false' [were] insufficient to plead an intent to deceive under Rule 9(b).  2009 WL 1381873, at * 4.  Here, like in *Juniper Networks*, SFT makes bare and conclusory allegations "upon information and belief" that RDC "with the knowledge that nothing is protected by an expired patent" and thus "falsely marked its products with intent to deceive the public."  Compl. ¶ 124.  Such conclusory allegations are insufficient.  *Juniper Networks*, 2009 WL 1381873, at * 4.  Because SFT has failed to plead with particularity any allegation of RDC's intent to deceive the public, SFT has failed to state a cognizable claim.

1         **2.     SFT Fails To State A Claim Under The Relaxed Pleading Standards Of**
2               **Rule 8(a).**

3        Even under the more liberal pleading standards of Rule 8(a), Plaintiff has failed to state a

4 plausible claim. *Iqbal*, 129 S.Ct. at 1949, *Twombly*, 550 U.S. at 557.  According to Fed. R. Civ. P.

5 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the

6 pleader is entitled to relief."  However, "some threshold of plausibility must be crossed at the

7 outset before a . . . case should be permitted to go into its inevitably costly and protracted

8 discovery phase." *Twombly*, 550 U.S. at 558, quoting *Asahi Glass Co. v. Pentech*

9 *Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D.Ill. 2003).  This threshold is something

10 beyond the mere possibility of a cause of action, otherwise a plaintiff with a largely groundless

11 claim would be allowed to "simply take up the time of a number of other people, with the right to

12 do so representing an *in terrorem* increment of the settlement value, rather than a reasonably

13 founded hope that the [discovery] process will reveal relevant evidence.'" *Dura Pharmaceuticals,*

14 *Inc. v. Broudo*, 544 U.S. 336, 347 (2005), quoting *Blue Chip Stamps v. Manor Drug Stores*, 421

15 U.S. 723, 741 (1975).  Thus, a claim must be facially plausible on the alleged facts and not merely

16 a conclusory allegation. *Twombly*, 550 U.S. at 557.

17        In *Brinkmeier v. Graco Children's Prods., Inc.*, in the context of a false marking case, such

18 as the one here, the court found that allegations like those pled by Plaintiff in this case were

19 insufficient to plead intent to deceive under Rule 8(a).  --- F.Supp.2d ----, No. C.A. 09-262-JJF,

20 2010 WL 545896 at * 4 (D. Del. Feb. 16, 2010).  In *Brinkmeier*, the plaintiff alleged "[u]pon

21 information and belief, [defendant] marked products identified in paragraph 41 with expired

22 patents for the purpose of deceiving the public into believing that something contained in or

23 embodied in the products is covered by or protected by the expired patent[s]."  2010 WL 545896,

24 at * 4.  The plaintiff also made allegations that the defendant "marked products identified in

25 paragraph 102 with expired patents for the purpose of deceiving the public. . . ."  *Id.* at *5.  The

26

27

28

1   court found that these were merely conclusory allegations that did not "supply enough factual

2   matter to suggest an intent to deceive." *Id.* at *4-5 (citing *Twombly*).[3]

3          Here too, SFT fails to allege sufficient factual matter to suggest RDC had intent to deceive.

4   SFT merely alleges (in entirety):

5          Upon information and belief, Roche marks its products with patents to induce the
       public to believe that each such product is protected by each patent listed and with
6          knowledge that nothing is protected by an expired patent.  Accordingly, Roche
       falsely marked its products with intent to deceive the public.
7

8   Compl. ¶ 124.  SFT's Complaint contains no factual allegations suggesting RDC intended to

9   deceive the public.  "[T]he tenet that a court must accept as true all of the allegations contained in

10  a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

11  action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.  The

12  Complaint contains mere conclusions that RDC marked the patent in question on its products with

13  intent to deceive.

14         Additionally, a product marked with an expired patent is not "unpatented" within the

15  meaning of Section 292, and therefore cannot form a basis on which to state a claim.  *See FMC*

16  *Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 584 (E.D. Pa 2005); *see also Wilson v.*

17  *Singer Mfg. Co.*, 30 F. Cas. 223, 223-24 (N.D. Ill. 1879), *aff'd* 12 F. 57 (C.C.N.D. Ill. 1882)

18  (because the public is presumed to know the law, marking a product previously covered by an

19  expired patent "does not subject the defendant to the penalty of this statute").  *But see Pequignot v.*

20  *Solo Cup Co.*, 540 F. Supp. 2d 649, 652-53 (E.D. Va. 2008).  The Federal Circuit has not spoken

21  on whether Section 292 applies to expired patents and there is little authority directly addressing

22  the issue.  *FMC*, 369 F. Supp. 2d at 584.  In *FMC* the court noted that although "the Patent Act

23  imposes a duty mark products covered by patents, there is no stated corresponding duty to remove

24  _____

25  [3] The *Brinkmeier* court did find that the plaintiff pled sufficient facts to support an intent to
    deceive with respect to one patent.  2010 WL 545896, at * 4.  The complaint alleged that the
26  defendant was involved in litigation regarding the patent in question and that the defendant revised
    its patent markings three times since the patent in question expired.  *Id.*  The court found that these
27  were sufficient facts to allege an intent to deceive with respect to that particular patent, even under
    the standards of Rule 9(b).  *Id.*  Plaintiff makes no such allegations here.

28

the patent number on a product whose patent has expired." *Id.*   The court further noted that displaying an expired patent on a product provides the public with the benefit "of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection." *Id.*

In finding to the contrary, the court in *Pequignot v. Solo Cup Co.* did not cite any cases holding that Section 292 applied to expired patents.  540 F. Supp. 2d at 652-53.  Instead, in reaching its conclusion, the court analogized to cases dealing with loss of exclusive rights, putting the subject matter into the public domain, and to cases involving double patenting.  *See id.* However, none of those cases cited by the court in *Solo Cup* is relevant to the meaning of the word "unpatented" as used in Section 292.

Because SFT fails to allege factual matter suggesting an intent to deceive, and because conclusory allegations of intent to deceive should not be accepted as true, the Complaint contains no allegations, which if true, would tend to support a claim for false patent marking under section 292.  Without allegations of intent to deceive, SFT fails to state a claim and therefore the claims against RDC should be dismissed.  Further, because Section 292 does not create liability for marking an expired patent, SFT cannot state a claim and the present action should be dismissed on this basis as well.

**E.      The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(7) Because Roche Diagnostics Corporation Is Not The Proper Party To The Action.**

RDC is not the proper defendant in this action because RDC neither marks patent numbers on the ACCU-CHEK® Softclix lancets nor directs that this product be marked.  RDC makes nothing and marks nothing; it merely sells the accused products.  *See* Young Decl. ¶ 7.

Section 292 is clear that liability attached to "[w]hoever marks upon, or affixes to, or uses in advertising in connection with an unpatented article . . . any word or number importing the same to be patented, for the purpose of deceiving the public."  The statute does not extend liability

1   to a party who merely sells or offers a product for sale.  *See Inventorprise, Inc. v. Target Corp.*,

2   No. 09-cv-00380, 2009 WL 3644076, at *5-6 (N.D.N.Y Nov. 2, 2009).[4]

3          Here, Plaintiff failed to join Roche Diagnostics Operations, Inc. and Roche Diagnostics

4   GmbH as necessary parties to this action under Fed. R. Civ. P. 19.  Relief under Section 292 is

5   only available against a party that falsely marks a patent number on the product in question.  In the

6   present case, Defendant RDC is not a proper party.  Thus, the claims against RDC should be

7   dismissed under Fed.R.Civ.P. 12(b)(7) for failure to join a party under a party under Rule 19.

8          **F.      The Court Should Stay The Present Action Pending Decision By The Federal
               Circuit.**
9

10         If the Court declines to transfer or dismiss the present claims against RDC, in the

11  alternative, RDC requests that the Court stay the present action pending the Federal Circuit's

12  ruling in *Stauffer v. Brooks Bros.*, Inc., Appeal Nos. 2009-1428, 2009-1430, 2009-1453 ("*Brooks

13  Bros.*") because it will likely bear directly on the Court's consideration of RDC's motion to dismiss

14  for lack of standing.  RDC further requests that the Court stay the present action pending the

15  appeal in *Pequignot v. Solo Cup Co.*, Appeal No. 2009-1547 ("*Solo Cup*"), in which the Federal

16  Circuit will consider the proper test for determining a "purpose to deceive the public" under

17  Section 292, because it will likely bear on whether Plaintiff can state a claim upon which relief can

18  be granted, or at least narrow the issues in this case.

19         In determining whether to grant a stay, courts consider "(1) whether discovery is complete

20  and whether a trial date has been set; (2) whether a stay will simplify the issues in question and

21  trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical

22  disadvantage to the non-moving party."  *Research in Motion, Ltd. v. Visto Corp.*, 545 F. Supp. 2d

23  1011, 1012 (N.D. Cal 2008).

─────────────────────

25  [4] Additionally, SFT fails to state a claim because the patent marking of the ACCU-CHEK®
    Softclix Lancets is located on a portion of the packaging not seen by retail customers when the
26  products are on the shelf and thus the patent numbers are not "used in advertising" by RDC.  *See*
    Young Decl. ¶ 8 (marking on back of packaging).  *Inventorprise, Inc. v. Target Corp.*, 2009 WL
27  3644076 at * 5 (mismarked patents on back of package not visible to retail customers was not
    advertising and mere sale does not "bring[] the matter within the purview of the 'in advertising'
28  provision of § 292(a)").

Here, SFT will not be prejudiced should the Court stay the present case. SFT has not alleged any injury to itself, and any delay in the case is far outweighed by the judicial economy that will be promoted by staying the case. The present case is in its infancy. RDC has not filed an answer and no discovery has occurred. The Court has not entered a case management order nor set a trial date. If this case were to proceed and the Federal Circuit affirms *Brooks Bros.*, then the parties would have needlessly wasted valuable resources in litigating a case in which SFT lacks standing. Conversely, if the Federal Circuit reverses *Brooks Bros.*, SFT would be in the same position as it is now. Similar reasoning applies if the Federal Circuit affirms *Solo Cup* as it relates to Plaintiff's allegations regarding RDC's intent to deceive the public. If the Federal Circuit rules that to establish intent to deceive in marking product with an expired patent under Section 292 requires more than mere knowledge, it would likely be fatal to Plaintiff's complaint containing the allegations that RDC acted "with knowledge that nothing is protected by an expired patent."

Further, a stay would likely simplify the issues and reduce the burden of litigation on the parties and the Court. In *Brooks Bros.*, the issue of proper standing in patent false marking cases is being considered by the Federal Circuit and a decision in that appeal may be dispositive in the present case. A decision in *Solo Cup*, even if not dispositive, is likely to narrow the issues in this case. Other district courts have already granted stays in similar cases which were warranted under the same circumstances. *See e.g. Zojo Solutions, Inc. v. Leviton Mfg.*, No. 10-cv-881 (N.D. Ill. Apr. 21, 2010) (Wappel Decl., Ex. C);. *San Francisco Tech. v. Adobe Sys, Inc.*, 2010 WL 1463571 (N.D. Cal. Apr. 13, 2010); *Heathcote Coatings Corp., Inc. v. Crayola LLC*, No. 10-cv-00342, Minute Order, (N.D. Ill. Apr. 8, 2010) (Wappel Decl., Ex. D); *Public Patent Found. v. GlaxoSmithKline Consumer Healthcare, L.P.,* No. 09-cv-05881, Order, (S.D.N.Y. Feb. 17, 2010) (Wappel Decl. Ex. E). As the district court reasoned in *Adobe*:

> In this instance, however, a stay pending a decision in the [*Brooks Bros.*] appeal appears warranted. First, plaintiff cannot complain about a stay if the alternative is that this Court chooses to follow [*Brooks Bros.*] and dismiss. If the Court declined to follow [*Brooks Bros.*], however, it seems inevitable that the Federal Circuit will rule before these actions could proceed to judgment. Then, unless the decision is a reversal, dismissal of these actions likely would be required. The possibility that [*Brooks Bros.*] may very well be reversed does not support expending party and court resources in the interim.

1    2010 WL 1463571 at *3.  The same reasoning applies here.  Further, as decisions by the Federal

2    Circuit in *Brooks Bros.* and *Solo Cup* are expected in the near future, a stay would not be

3    immoderate or indefinite.  Therefore, the Court should grant a stay of the present case if the Court

4    declines to grant the other relief requested by RDC herein.

5    **III.    CONCLUSION**

6           For the reasons stated herein, the claims against RDC should be severed and dismissed in

7    favor of the previously filed action in the Northern District of Illinois.  Alternatively the claims

8    against RDC should be transferred to the Southern District of Indiana for the convenience of the

9    parties and in the interests of justice because the claims against RDC are unrelated to the claims

10   against any other defendant and this case has no connection California or to this judicial district,

11   other than being the home forum of the SFT.  Further, and/or in the alternative, SFT lacks standing

12   to maintain the present action because SFT failed to allege concrete, particularized, and actual

13   injury, arising from RDC's actions and therefore, the claims against RDC should be dismissed for

14   lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  Further, and/or in the alternative, SFT has

15   failed to allege facts to support a cognizable claim that RDC marked its products with patents for

16   the purpose of deceiving the public.  SFT failed to plead RDC's intent to deceive with particularity

17   under Rule 9(b) of the Federal Rules of Civil Procedure.  Even under the general pleading

18   standards of Rule 8(a), SFT has failed to allege sufficient facts to show that RDC acted with intent

19   to deceive.  SFT has failed to state a claim upon which relief can be granted and the claims against

20   RDC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Further, and/or in the alternative,

21   the claims against RDC should be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) because RDC is

22   not the proper party to this action.  Finally, if the Court declines the relief requested herein, RDC

23   requests that the case be stayed pending decision by the Federal Circuit in *Stauffer v. Brooks*

24   *Bros.*, which is likely to bear directly on SFT's standing to bring this action and *Pequignot v. Solo*

25   *Cup Co.*, which will likely bear directly on the Court's consideration of RDC's motion to dismiss

26   for failure to state a claim.

27

28

1    Dated:  May 7, 2010                    BERGESON, LLP

2                                           BARNES & THORNBURG LLP

3

4                                           By: _____/s/_____
                                                    Daniel P. Albers
5

6                                           Attorneys for Defendant
                                            ROCHE DIAGNOSTICS CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28