Scott R. Miller (SBN 112656)
Email: smiller@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
333 South Grand Avenue, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 787-2500
Facsimile: (213) 687-0498

Francis DiGiovanni (admitted *pro hac vice*)
Geoffrey A. Zelley (admitted *pro hac vice*)
Email: fdigiovani@cblh.com
Email: gzelley@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
Wilmington, Delaware 19899
Telephone: (302)658-9141
Facsimile: (302)658-5614

Attorneys for Defendants
Maybelline LLC and Softsheen-Carson, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| San Francisco Technology Inc.,<br><br>Plaintiff,<br><br>v.<br><br>The Glad Products Company, et al.,<br><br>Defendant. | C.A. No. 5:10-cv-00966-JF<br><br>Judge: Hon. Jeremy Fogel<br>Date: July 8, 2010<br>Time: 1:30 PM<br>Courtroom: Courtroom 3, 5th Floor<br><br>**DEFENDANTS MAYBELLINE LLC AND SOFTSHEEN-CARSON, LLC'S REPLY BRIEF IN SUPPORT OF ALTERNATIVE MOTION TO SEVER AND TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**<br><br>Complaint Filed: March 5, 2010 |

Despite its previous unsuccessful attempt to join a number of unrelated defendants into one false marking case in this district, SFTI tries again with the same principal arguments that were rejected in *SFTI v. Adobe*. SFTI presents *no* common issues of fact in the present case, and instead relies on common legal questions present only because suit was brought under the same statute in a futile attempt to justify its inappropriate joinder. SFTI further tries to prevent severance and transfer of this case by admitting that it is an unfunded company created and run by the law firm prosecuting this case, and then arguing that it would somehow be unfair to prosecute its case in the districts in which the defendant companies are headquartered. Plaintiff's arguments fail. Severance and transfer should be granted because the cases against the individual defendants lack common facts and will more conveniently proceed in jurisdictions having significant connections to the parties and facts.

I. **Plaintiffs' Actions Against Maybelline and SoftSheen-Carson Should Be Severed Because They Lack Sufficient Commonality**

SFTI essentially makes three arguments in opposing the motion to sever filed by Maybelline and SoftSheen (and at least six other defendants): (1) a nebulous argument about a "common fact" in the form of an ill-defined public harm; (2) a manufactured argument regarding "common legal questions," most of which are borne out of the plaintiff's attempt to bring suit under the same statute; and (3) the argument that most questions up to this point (before fact discovery has even begun) have been common. These arguments illustrate only that SFTI has failed on many levels to plead a viable claim under § 292, and have no bearing on Maybelline and SoftSheen's motion to sever. Two of these arguments, arguments 2 and 3 above, were made and soundly rejected by Judge Seeborg of this court in *SFTI v. Adobe Sys., Inc.*, 09-cv-6083 (April 8, 2010) (Zelley Decl., Dkt. 145 at Ex. A). Judge Seeborg stated in that case: "There is no tenable argument that the claims alleged against each of these separate defendants arise out of the 'same transaction, occurrence, or series of transactions or occurrences.'" *Id.* at 3. There is no relevant

difference between the facts of that case, and the facts of the present case. Therefore, severance is equally proper here.

### A. There is No Common Question of Fact

SFTI's attempts to ascribe a common question of fact to some nebulous harm felt due to a violation of § 292 serves only to illustrate that the only common question in the present case between all the defendants is whether they violated the same statute. As Maybelline and SoftSheen stated in their motion to sever and transfer, and has been well defined in the case law, the mere violation of the same statute is insufficient to make joinder proper. *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1080-81 (C.D. Cal. 2002); *Martinez v. SafewayStores, Inc.*, 66 F.R.D. 446, 449 (N.D. Cal. 1975). As a result, there are no common questions of fact relevant to the issue of proper joinder, and the case against Maybelline and SoftSheen should be severed from the remainder of the defendants.

SFTI cites language from *Forest Group* for the proposition that false marking results in some nebulous harm that is felt by the "consuming public," and therefore the claims "arise out of the same 'series of transactions or occurrences.'" Pl. Brief at 2. What SFTI fails to realize is (1) the language quoted from *Forest Group* illustrates only the possible harms that *may* be felt as a result of a false marking under §292, and (2) the "consuming public" likely to be affected by a particular false marking will inevitably be different for each marking.

There is no indication of a common harm amongst the defendants named in this suit. In fact, there is no allegation of a harm at all, let alone one that would be common between defendants. *See* Maybelline and SoftSheen's motion to dismiss, Dkt. 142. The passage cited from *Forest Group* does not by itself prescribe a harm that will automatically form based on the violation of § 292, but instead illustrates potential harms that could exist as a result of a violation of § 292. None of those harms are alleged to be shared, and in fact none of those harms are shared. As such, SFTI's arguments that such harms are shared is unavailing.

SFTI further assumes that, to the extent that any of those harms are present, they are common in that they affect an undefined "consuming public." The fact remains that the "consuming public" for each alleged false marking is going to be different, and different industries, companies, or individuals would be harmed by different markings. SFTI has alleged nothing that shows that the same members of the public, whether they be individuals, companies, or industries, have felt the same harm as a result of the alleged false marking. As the Defendants sought to be joined are from a variety of industries, it is expected that different members of the general population would fit the description of "consuming public" for each marking, and as a result there is no common harm.

SFTI attempts to create an issue where there is none through allegations against Defendants surrounding SFTI's attempts to gather information through the court-mandated pre-CMC conference call.[1] It is unclear what exactly SFTI could have found out that would make their joinder proper. There is no requirement in Rule 26(f) or the court's local rules for Defendants to reveal their entire defensive strategy. The fact that SFTI attempted to use the pre-CMC telephone conference as a fishing expedition to justify actions it took months ago illustrates only that SFTI failed to do the required due diligence, and lazily filed a combined suit while aware of no common facts.

Maybelline's and SoftSheen's motion established that there are no legitimate common questions of fact. The defendants are different and unrelated; the products alleged to be falsely marked are different and unrelated; the patents alleged to be falsely marked on those products are unrelated; even though no harm has been alleged at all, it is clear that to the extent anyone was harmed by the alleged false marking, those people are inevitably

---

[1] SFTI incorrectly reports (Pl. Sever. Br. at 2) that the conference call among the parties on June 16th lacked a discussion regarding claims and defenses. Indeed, a lengthy discussion was had, initiated by defense counsel, regarding the defendants' lack of the "intent to deceive" that is required for an action under 35 U.S.C. 292. This dispositive defense was not only raised, but defense counsel challenged SFTI's counsel as to the complete lack of evidence of such an intent to deceive, but SFTI's counsel did not offer or describe any evidence of intent to deceive. Further, SFTI's counsel stated that a draft report of the conference would be circulated by June 18th, but SFTI's counsel missed that deadline.

different. In short, there is no good faith basis for joining the Defendants, as has already been pointed out by this Court in the *SFTI v. Adobe* case. Zelley Decl., Dkt. 145 at Ex. A.

### B. Without Common Issues of Fact, Severance of the Claims Against Maybelline and SoftSheen is Proper

SFTI alleges generally that "this court will likely be called upon to resolve at least the following questions of law and fact," Pl. Br. at 2, and then proceeds to list 12 different legal questions that have been raised by one or more defendant. Beyond the fact that none of the listed "questions" is a question of *fact*, the remaining legal questions illustrate only the insufficiency of SFTI's pleading, and do not stand for the proposition that joinder is proper in this case. SFTI does not contend that the defendants are jointly liable. Outside of the alleged "common question of fact" discussed above, SFTI does not contend that any factual issues are the same or even overlapping. In fact, SFTI does not even address Federal Rule of Civil Procedure 20(a)(2)(A)'s requirement that defendants may be joined only if the actions arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).

Whether SFTI's claims arise out of the same transaction or occurrence "refers to similarity in the factual background of a claim." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Merely joining claims based on the same general theory of law is not sufficient to satisfy this requirement of Rule 20(a)(2)(A). *Id.* at 1351. Because SFTI cannot meet this first requirement under Rule 20(a)(2), joinder of the claims against the unrelated Defendants was improper, *see Coughlin*, 130 F.3d at 1351, and the claims must be severed.

Furthermore, the legal questions raised by SFTI are only common because the claims are based on the same theory of law—the false marking statute. Certainly "common" legal issues arise when asserting, construing, and applying the same statute. Issues such as sufficiency of the pleadings, standing, and right to a jury trial on certain issues arise purely as legal and statutory interpretation issues, and might be present in any case brought under the same federal statute. Plaintiff cannot point to a single "common issue" that is factually rather than legally based.

4
DEFENDANTS MAYBELLINE LLC AND SOFTSHEEN-CARSON, LLC'S REPLY BRIEF IN SUPPORT OF ALTERNATIVE MOTION TO SEVER AND TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

### C. SFTI's Argument as to the Predominance of Common Questions Is Unavailing

SFTI attempts to circumvent the requirements for proper joinder by arguing that this case involves a sufficient overlap between common and individual questions. Pl. Br. 4. However, as demonstrated above, there are *no* common questions of fact, and what common questions of law exist do so solely as a result of all the Defendants being sued under the same statute. As a result, this argument carries no weight.

SFTI argues that the so-called "common questions" must be determined before liability can be addressed. (Pl. Sever. Br. 4.) This has absolutely no relevance in determining whether severance is appropriate. District courts continually make legal determinations based on statutory construction and adequacy of the pleadings prior to addressing liability. SFTI cannot identify one reason why the Southern District of New York, as opposed to the Northern District of California, cannot make these determinations in the case against Maybelline and SoftSheen.

In putting forth this argument, SFTI ignores all of the numerous issues and questions particular to each of the Defendants, such as decisions to mark, whether there was an intent to deceive, the timing and length of the marking, the nature and number of the products sold, the nature and numbers of the various patents involved, and the length of time of the marking. Severance is appropriate "to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The "morass" occurs during fact discovery as well as presentation to the jury. SFTI attempts to dismiss those concerns by suggesting bifurcated trials and stating that "[i]f the defendants truly have concern about jury confusion in a common trial, they can move at an appropriate time for a phase trial or bifurcated trials." Pl. Br. at 5. This does not account for the prejudicial and costly effects of letting the case go forward as structured during fact discovery. Maybelline and SoftSheen will have to spend significant time and money attending depositions of other defendants or third parties, reviewing documents served by and addressed to other defendants, reviewing factually-based motions of other defendants,

and attending hearings for other defendants. Given the extraordinary and unnecessary burdens that joinder will impose during the discovery and pre-trial phase of litigation, bifurcation of the trials is simply not a sufficient remedy.

## II. The Actions Against Both Maybelline and SoftSheen-Carson Should Be Transferred to the Southern District of New York Pursuant to 28 U.S.C. § 1404(a)

Maybelline and SoftSheen each demonstrated, in their combined opening brief (docket no. 144), that the Southern District of New York was clearly a more convenient venue than this Court. Even after admitting in a factually similar case that "I don't think that there is a very strong basis to keep venue here for the moving defendants if the cases are severed" (*SFTI v. Adobe* Transcript p. 14: lines 1-4 (Zelley Decl. Ex. B)), SFTI filed an answering brief (docket no. 214), but it did not address the categorical contacts of Maybelline and SoftSheen (and the facts underlying this case) to the Southern District of New York, and thus did nothing to refute this conclusion.

### A. The Absence of a "Contract" Does Not Weigh Against Transfer

SFTI, lacking any favorable factors relevant to the transfer analysis, make the odd argument that the lack of a contract between SFTI and any defendant "weighs against transfer." (SFTI Transf. Br. 2.) The absence of a relevant contract is merely neutral to the analysis. *See Davis Moreno Const., Inc. v. Frontier Steel Bldgs. Corp.*, 2009 WL 1476990, *17 (E.D. Cal. May 26, 2009) (where no contract favoring one jurisdiction or the other existed, the court found that "[t]his factor is neutral"). To hold otherwise would reward a shell company such as SFTI—created July 14 2009 by the law firm that filed the suit, and existing solely to sue companies and try to collect fines—because such shell companies have no contracts to begin with.

### B. The "Governing Law" Factor Does Not Weigh Against Transfer

SFTI again tries to fabricate a "factor" in its favor by arguing that the "governing law" in this case is Cal. Code Civ. Proc. § 1021.5, and thus this disfavors transfer. (SFTI Transf. Br. 2.) This argument fails for several reasons.

First, Cal. Code Civ. Proc. § 1021.5 *does not apply to this case*, which was expressly filed as an action under the federal patent false marking statute. As the Ninth Circuit has held:

> Defendants' reliance on California Code of Civil Procedure § 1021.5 is misplaced. . . . The case was decided based on federal law, not on state law. Defendants are not, therefore, entitled to an award of attorneys' fees based on California state law.

*Belshe v. Ronald*, 156 F.3d 1235, 1998 WL 467000, *1 (9th Cir. 1998).

Second, Cal. Code Civ. Proc. § 1021.5 is inapplicable because SFTI has not asserted in its complaint that it is entitled to attorneys' fees under that statute. *See Mariscal v. Aqua Supreme*, 2009 WL 5216920 (N.D. Cal. Dec. 30, 2009) (the Court agreed with defendants that attorneys' fees under Cal. Code Civ. Proc. § 1021.5 were not applicable unless they were pled in the complaint).

Third, the "governing law" of the case, for the purpose of the transfer analysis, is the federal law of false patent marking, not an inapplicable tangential attorneys' fees statute. With that in mind, "[t]he second factor (familiarity with the governing law) is inapplicable in a choice between two federal courts applying federal law." *Sorensen v. Phillips Plastics Corp.*, 2008 WL 4532556, *4 (N.D. Cal. Oct. 9, 2008).

Accordingly, this factor is neutral because the federal statute under which this case was filed is equally familiar to both the transferor and transferee courts.

### C. The Plaintiff's Choice of Forum Is Not Entitled to Deference

SFTI cites *Forest Group Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009), in a misguided attempt to refute the defendants' argument that plaintiff's choice of forum is not a factor in qui tam cases. (*See* SFTI Transf. Br. 2-3.) Yet the passage of *Forest Group v. Bon Tool* to which SFTI cites merely makes the unremarkable point that the false marking statute should provide "sufficient financial motivation for plaintiffs." (*Id.*) The case makes no mention of transfer and the statutory balance of conveniences required by 28 U.S.C. § 1404(a). Yet, class action cases, like qui tam cases, are designed to provide sufficient

financial motivation to plaintiffs, and they are subject to a diminished "plaintiff's choice of forum" factor in the transfer analysis. *See Johns,* 2008 WL 2811827, *2-3. Moreover, any deference accorded to the plaintiff's chosen forum is further weakened due to the lack of operative facts occurring in this district. *See Pacific Car and Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, a plaintiff's choice is only entitled to minimal consideration.").

### D. The Parties' Contacts with the Transferor and Transferee Forums Favor Transfer

Through sleight of hand, SFTI argues the "contacts" factor without ever considering the defendants' substantial contacts with the Southern District of New York and nearby locations. (SFTI Transf. Br. 3-4.) SFTI looks only at the parties' contacts with *this* Court, yet the caselaw requires an assessment (and weighing) of the parties' contacts with both the transferor and transferee forums. *See, e.g., Southards v. ConAgra Foods, Inc.,* 2008 WL 108899, *2 (N.D. Cal. Jan. 8, 2008) (transferring case where "primary witnesses" were located in the transferor forum); *Woodward v. Seghers,* 2006 WL 2130745, *4 (N.D. Cal. July 28, 2006) (examining contacts with Texas in deciding to transfer the case to the Northern District of Texas). An examination of the minimal contacts to this venue and the significant contacts with the transferor venue yields but one conclusion: the case should be transferred to the Southern District of New York.

SFTI does not dispute the overwhelming facts that connect Maybelline and SoftSheen to the Southern District of New York. Maybelline and SoftSheen demonstrated that their witnesses, documents, facilities, and headquarters are in or near the Southern District of New York. (Maybelline Br. 9-10; Hastings Decl. ¶¶ 10-21.) Because SFTI cannot contest this, it merely points to the sales of Maybelline and SoftSheen products in California. But Maybelline and SoftSheen products are sold in the Southern District of New York, too, so this "fact" in no way favors the Northern District of California.

As for SFTI's contacts with the Northern District of California, they are paper thin—SFTI is a brand new company, formed in July 2009 for the sole purpose of litigating these cases. Thus its "office" in San Jose (in the same offices as the plaintiff's law firm) is insignificant in the balance of conveniences analysis. *See Zimpelman v. Progressive Northern Ins. Co.,* 2010 WL 135325, *1 (N.D. Cal. Jan. 8, 2010) ("courts generally do not consider the convenience of counsel to be a relevant factor in considering a motion to transfer venue"). These facts heavily favor transfer.

### E. The Parties' Contacts Relating to the Current Dispute Favor Transfer

The transfer analysis further specifically considers those contacts of the parties that pertain to the current dispute. Here, the facts underlying the accused activity are not only centered in or near the Southern District of New York, but are almost exclusively located there. Maybelline and SoftSheen, in their opening brief, demonstrated that all of the relevant activity pertaining to the products and packaging at issue in this case occurs in or near the Southern District of New York. (Maybelline Br. 9-10; Hastings Decl. ¶¶ 10-21.) Because the "false marking" cause of action focuses on the defendant's actions and intent in marking the accused products with patent numbers, the facts of importance pertain to the marking itself—the creation of the packaging that includes the patent numbers on it. All of that activity occurs in or near the Southern District of New York. *Id.* Indeed, SFTI concedes that this factor favors transfer. (SFTI Transf. Br. 3.)

### F. The Cost of Litigation in the Forum Favors Transfer

In their opening brief, relying on recognized criteria, Maybelline and SoftSheen showed why litigating in the Southern District of New York would be less expensive than litigating in this Court. (Maybelline Br. 9-10; Hastings Decl. ¶¶ 10-21.) Ignoring these costs—which focus on multiple witnesses and documents, as well as court statistics—SFTI complains that its sole employee (the managing partner of SFTI's law firm) would be burdened if he had to travel to multiple jurisdictions to prosecute the cases that he filed.

(SFTI Transf. Br. 4.) This argument, full of chutzpah[2] but devoid of persuasiveness, might have been best considered by SFTI before it voluntarily sued 32 companies headquartered all across the United States.

SFTI further cites the case of *IP Co. v. Oncor Electric Delivery*, No. 2:09-0037-DF, slip op. at 1 (E.D. Tex.), in an apparent attempt to show that cost savings are achieved when multi-defendant cases are not partially transferred. However, when the cases lack any common facts, as in the instant litigation, there is no colorable argument in favor of keeping the cases together for purposes of overall cost and efficiency.

### G. Third Party Witnesses Do Not Weigh in Favor of This Forum

In examining the transfer factor that focuses on "the availability of compulsory process to compel attendance of unwilling non-party witnesses," SFTI clinically dissects several local Target and Walgreens stores' warehousing, stocking, and sales floor practices. (SFTI Transf. Br. 6.; Fingerman Decl. ¶ 2.) SFTI's conclusion: the stockboys will need to be deposed. (*Id.*) Incredulity aside, SFTI does not even attempt to explain how such "witnesses" are *critical*, or even *necessary*. See *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357, *5 (N.D. Cal. Oct. 24, 2007) (considering effect of third party witnesses only after determining that they were "critical"); *International Broth. of Teamsters v. North American Airlines*, 2005 WL 947083, *4 (N.D. Cal. Apr. 20, 2005) (stating that it would consider only "witnesses whose testimony will be necessary"). SFTI also does not allege or explain why those particular local workers and their bosses have any more information (or relevance) that the thousands of other laborers and store managers in the United States, including those in the Southern District of New York, that stock the defendants' products.

### H. Sources of Proof Favor Transfer

SFTI makes one argument to try to refute the dispositive fact that all of the materials pertaining to marking the accused Maybelline and SoftSheen products are located in or near

---

[2] See *Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n*, 54 F.3d 756, 763 n.7 (Fed. Cir. 1995) ("chutzpah" describes "the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan").

the Southern District of New York (Maybelline Br. 9-10; Hastings Decl. ¶¶ 10-21): that the few sample products purchased by plaintiff (and its counsel, who are one) are apparently sitting in a box in plaintiff's lawyer's office. (*See* SFTI Transf. Br. 7.) This "fact," if it were one, would be present in virtually every patent case, yet no court has ever given it any weight. Instead, this factor weighs heavily in favor of transfer because of the location of the relevant proof that will require discovery. *See, e.g., Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.*, 2006 WL 2374738, *5 (N.D. Cal. Aug. 16, 2006) (transferring case because, *inter alia*, "all the documentary evidence pertaining to the development, marketing and sales of the Q-Ray ionized pendant are located in Illinois").

### I.   No Discovery Is Needed to Conclude that a Transfer Is Warranted

Finally, SFTI meekly asks for discovery to try stave off the avalanche of factors favoring transfer. This is to no avail. First, the discovery requests that SFTI makes would not help its arguments—the principal one being "a reasonable opportunity for SF Tech to conduct discovery into the sales of the accused products in California" (SFTI Transf. Br. 4), which, as explained above, is meaningless because Maybelline and SoftSheen products are sold in all states, and in any event the *retail sale* of the named product is not the focus of the actual mis-marking inquiry. The *defendants' marking* is the focus.[3]

In sum, Maybelline and SoftSheen have provided compelling reasons why the case against them should be transferred to the Southern District of New York, while SFTI grasps for irrelevancies and trivial connections to this Court. Counsel for SFTI accurately concluded when he stated, in open court before Judge Seeborg, that "I don't think that there is a very strong basis to keep venue here for the moving defendants if the cases are severed. So I'm not going to waste the Court's time and argue that." *Id.* at Transcript p. 14: lines 1-4

---

[3] SFTI also mentions "a reasonable opportunity for SF Tech to conduct discovery into the moving defendants' contacts with California" (SFTI Transf. Br. 4), but this too cannot prevent transfer because the defendants' activities that pertain to marking are at issue, and this has already been shown to occur in or near the Southern District of New York. (Maybelline Br. 9-10; Hastings Decl. ¶¶ 10-21) Similarly, SFTI's request for "a reasonable opportunity for SF Tech to conduct discovery into the locations where the moving defendants store such materials" is meaningless, especially as against Maybelline and SoftSheen, which have provided a detailed declaration. (*Id.*)

(Zelley Decl. Ex. B). Although defendant has had a change of mind (or strategy), there has been no change of facts or law, and transfer is overwhelmingly warranted.

## CONCLUSION

In view of the foregoing arguments and those set forth in the opening brief, the motions to sever and transfer venue filed by Maybelline and SoftSheen should be granted.

Dated: June 24, 2010

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ LLP

By: /s/ *Francis DiGiovanni*
Francis DiGiovanni

Scott R. Miller (SBN 112656)
Email: smiller@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
333 South Grand Avenue, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 787-2500
Facsimile: (213) 687-0498

Francis DiGiovanni (admitted *pro hac vice*)
Geoffrey A. Zelley (admitted *pro hac vice*)
Email: fdigiovani@cblh.com
Email: gzelley@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
Wilmington, Delaware 19899
Telephone: (302)658-9141
Facsimile: (302)658-5614

*Attorneys for Defendants*
*Maybelline LLC and*
*SoftSheen-Carson, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 24, 2010, the foregoing document was filed with the Clerk of U.S. District Court of the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-4 and General Order 45. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-5 and General Order 45 to accept that Notice as service of this document.

Date:  June 24, 2010                     Connolly Bove Lodge & Hutz LLP

                                         By:   /s/ *Francis DiGiovanni*
                                               Francis DiGiovanni

                                               Attorney for Defendants
                                               Maybelline LLC and Softsheen-Carson, LLC