1    Randall L. Allen (SBN 264067)
     randall.allen@alston.com
2    Elizabeth H. Rader (SBN 184963)
     elizabeth.rader@alston.com
3    **ALSTON & BIRD LLP**
     Two Palo Alto Square
4    3000 El Camino Real, Suite 400
     Palo Alto, California  94306
5    Telephone:      650-838-2000
     Facsimile:      650-838-2001
6

7    Attorneys for Defendant
     MEDTECH PRODUCTS INC.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13   SAN FRANCISCO TECHNOLOGY INC.,          Case No.: 5:10-cv-00966-JF

14              Plaintiff,                    **DEFENDANT MEDTECH PRODUCTS,
                                              INC.'S REPLY IN SUPPORT OF ITS
15        v.                                  MOTION TO SEVER AND TRANSFER
                                              VENUE TO THE SOUTHERN
16   THE GLAD PRODUCTS COMPANY, BAJER         DISTRICT OF NEW YORK**
     DESIGN & MARKETING INC., BAYER
17   CORPORATION, BRIGHT IMAGE                DATE:      July 8, 2010
     CORPORATION, CHURCH & DWIGHT CO.         TIME:      9:00 a.m.
18   INC., COLGATE-PALMOLIVE COMPANY,         JUDGE:     Jeremy Fogel
     COMBE INCORPORATED, THE DIAL             CTRM:      Courtroom 3, Fifth Floor
19   CORPORATION, EXERGEN
     CORPORATION, GLAXOSMITHKLINE LLC,
20   HI-TECH PHARMACAL CO. INC.,
     JOHNSON PRODUCTS COMPANY INC.,
21   MAYBELLINE LLC, MCNEIL-PPC INC.,
     MEDTECH PRODUCTS INC., PLAYTEX
22   PRODUCTS INC., RECKITT BENCKISER
     INC., ROCHE DIAGNOSTICS
23   CORPORATION, SOFTSHEEN-CARSON
     LLC, SUN PRODUCTS CORPORATION,
24   SUNSTAR AMERICAS INC.
25
              Defendants.
26

27

28

## I.   INTRODUCTION

S.F. Tech's arguments against severance are specious.  The so-called "common issues of fact and law" which S.F. Tech identifies in its opposition are issues of law, not issues of fact.  As such, none of them creates any risk of duplicative discovery if the claims against the unrelated defendants are severed.  Most of them are common to all false marking cases.  In struggling to point to any necessary discovery that is common to all the numerous unrelated defendants, the best S.F. Tech can do is suggest that employees at the Walgreens and Target stores where the accused products were purchased are witnesses found only in this district and that these local stores also have documents.  While S.F Tech may feel like it must offer at least some *pro-forma* opposition to the motion, its arguments fail as a matter of law.  S.F. Tech's claim against Medtech is not that it sold its products at certain Walgreens and Target stores, but that it sold falsely-marked products for retail sale throughout the country.  Thus, the operative discovery in this case will focus on Medtech, its records and its employees.  Plaintiff's suggestion that it would rely on the records of a particular store in this district or any employee of those stores strains credulity.  Based on Plaintiff's own Complaint, this case is about the sale and marking of products by Medtech.  Discovery regarding those issues will center on Medtech, its documents, and its employees. Those discovery issues relate to no common factual questions and they bear no relationship to California.

Similarly, with respect to Medtech's motion to transfer S.F. Tech's claim against Medtech to the Southern District of New York, S.F. Tech argues that various of the factors in a choice of venue analysis weigh against transfer.  Again, however, S.F. Tech essentially asks the Court to conclude that San Jose witnesses and documents are necessary sources of proof in the face of pleadings and declarations showing that, on the contrary, most if not all relevant witnesses and documents are in New York.  Additionally, for several factors, S.F. Tech essentially asks for special treatment because it is a *qui tam* plaintiff incorporated solely for the purpose of bringing false marking cases and its lawyers are located in San Jose.  No authority supports giving extra weight to plaintiff's choice of venue or plaintiff's cost of litigation in the defendant's home forum merely because the plaintiff is a qui tam relator.  To the contrary, this district is home to neither plaintiff (a Delaware corporation with no actual business) nor Medtech.   This district's selection

1    is solely for the convenience of plaintiff's counsel.  For all these reasons, S.F. Tech's opposition

2    fails to overcome the reasons set forth in Medtech's motion to sever and transfer.

3              **II.     THE COMMON ISSUES PLAINTIFF IDENTIFIES ARE ALL LEGAL
                        ISSUES AND THUS THE ARGUMENT THAT SEVERENCE WILL
4                       REQUIRE DUPLICATIVE DISCOVERY IS SPECIOUS.**

5              As noted in Medtech's Opening Brief, common questions of law or fact do not exist

6    merely because claims against all defendants are based on the same general theory of law.

7    *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *see also S.F. Tech. v. Adobe et al*, 2010

8    WL 1463571 (N.D. Cal. April 13, 2010).   Here, there are common *legal* issues among the claims

9    against the numerous defendants solely because S.F. Tech's Opposition (at page 3) lists twelve

10   issues (labeling them common questions of fact) but these are legal issues found in any false

11   marking cases pending around the country. [1]

12             S.F. Tech relies on the declaration of its counsel for the contention that "many witnesses in

13   California have knowledge relevant to S.F. Tech's claims."  Declaration of Dan Fingerman at ¶ 2.

14   These witnesses are only identified as unnamed store managers, pharmacists and stock clerks at a

15   particular Walgreens or Target store, supposedly expected to testify about the volume of products

16   sold in their particular stores and how often stock turns over.   *Id.*  This will not be important

17   discovery and indeed is not likely to be discovery that S.F. Tech even pursues.   S.F. Tech's

18   alleged penalties are based on the total numbers of products marked by defendants.  *See The*

19   *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, at 1303-04 ( Fed. Cir. 2009) (penalties for

20   false marking are assessed on a per article basis); *see also* Complaint at ¶ 111 ("Medtech marks its

21   products with patents to induce the public to believe *each such* product is protected.").  S.F. Tech

22   is not going to prove the number of articles marked by presenting testimony about the number of

23   accused products sold in individual Walgreens and Target stores.  Rather, evidence about total

24   products marked will be discovered in documents found at Medtech's facilities in New York and

25   testimony of Medtech's employees in New York, not in documents and testimony from individual

26   retail stores' records and employees.  Next, Mr. Fingerman states that physical evidence of the

27

28        [1] S.F. Tech admits that the issue of whether information on a website is "advertising" under
     Section 292 applies to some, not all, of the defendants – a list not including Medtech.

1   defendants accused products, packaging, labels and advertising is located in San Jose and he does

2   not have knowledge about such samples existing elsewhere.  Again, authentication of the samples

3   is likely to be readily accomplished by paper discovery of documents maintained in New York.

4   Moreover, S.F. Tech does not dispute the declaration testimony of Mr. Connors that documents

5   concerning Medtech's products, packaging and labels are found at Medtech's facilities in New

6   York.  *See* Docket No. 176, (Connors Decl.), at ¶ 10.

7          S.F. Tech implies that it was prejudiced because defendants refused in the Rule 26(f)

8   conference to "discuss the claims and defense" so it does not know what defenses may be common

9   to all the defendants.  In conferring, the parties must "consider the nature and basis of their claims

10  and defenses"  in order to discuss the possibility of settlement, arrange for initial disclosures,

11  discuss what discoverable information needs to be preserved, develop a proposed discovery plan,

12  and cooperate to prepare a written agreement outlining the discovery plan.  Fed. R. Civ. P.

13  26(f)(2).  The conference is not meant to supplement the pleadings as a source of evidence of

14  common issues of fact not pleaded in the plaintiff's complaint.  Here, both parties agreed that

15  discovery should not begin until the Court rules on the pending motions to dismiss, stay, sever and

16  transfer, and Medtech has cooperated with preparing and filing the Joint Case Management

17  Statement.

18         Finally, S.F. Tech fails to offer any response to, or make any effort to distinguish, Judge

19  Seeborg's decision in its first foray in this district as a *qui tam* plaintiff, *San Francisco Tech., Inc.*

20  *v. Adobe Systems*, Inc., finding there "simply is no basis to join these fourteen defendants in a

21  single suit." 2010 WL 1463571, at *2 (N.D. Cal. Case No.: 5:09-cv-6083 April 13, 2010).

22         A central fact-intensive issue in S.F. Tech's false marking claim against Medtech is the

23  whether Medtech, when it marked its products, acted "for the purpose of deceiving the public."

24  *Pequignot v. Solo Cup Co.,* No.2009-1547, slip op., 2010 U.S. App. LEXIS 11820, * 12 (Fed. Cir.

25  2010) (the combination of marking with an expired patent and knowledge that the patent was

26  expired creates a "weakened" rebuttable presumption of intent to deceive but does not preclude a

27  defendant from offering evidence that it did not intend to deceive).  S.F. Tech offers no argument

28  that any witnesses in California, such as the unnamed Walgreens and Target employees, have any

1   information about any defendant's knowledge or lack of knowledge of a patent's having expired

2   or of its intent with respect to marking its products, much less that such evidence is somehow

3   common to all defendants.  Accordingly, the Court should sever Plaintiff's claim against Medtech.

4   **III.    THIS NEW YORK-CENTERED DISPUTE SHOULD BE TRANSFERRED
          TO THE SOUTHERN DISTRICT OF NEW YORK, THE MORE
5          CONVENIENT AND APPROPRIATE FORUM.**

6          S.F. Tech does not dispute that this action could have been brought in the Southern District

7   of New York, and agrees that the Court should make an "individualized, case-by-case

8   consideration of convenience and fairness," weighing the convenience of the parties, the

9   convenience of the witnesses, and the interest of justice, applying the factors in *Jones v. GNC*

10  *Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  S.F. Tech's analysis of the factors and their

11  weight lacks factual and legal support.

12          **A.    Medtech Has No Significant Contact With The Northern District of
13                 California**

14          The only allegation in the Complaint concerning Medtech's contacts with the Northern

15  District of California is that "[u]pon information and belief, Medtech has sold its products,

16  including falsely marked products, in California and in this District and/or in the stream of

17  commerce with knowledge that they would be sold in California and in this District."  Complaint

18  at ¶ 41.  S.F. Tech also alleges that Medtech's parent company's web site states that Medtech's

19  products are available for purchase at many locations in California.  *Id.*  The mere fact that

20  Medtech, a company located in New York, places its products into the stream of commerce

21  outside of California is not a factor weighing against transfer to the Southern District to New

22  York.

23          **B.    S.F. Tech Admits That The Lack of Medtech Contacts with California
24                 Relating to False Marking Weighs In Favor of Transfer.**

25          As noted in Medtech's moving papers, the operative facts in plaintiff's claim against

26  Medtech, such as packaging design decisions for the United States, are managed in New York.

27  *See* Connor Decl., at ¶¶ 7-8, 10.  Medtech's entire business operations are directed from its

28  headquarters in New York.  *Id.* at ¶¶ 7-8.  S.F. Tech does not deny that the key witnesses for the

case – Medtech's personnel – are all located in New York.  *See id.* at ¶¶ 7-8.  S.F. Tech complains

that "it is impossible to determine from the documents submitted by the defendants how much of

their accused products are sold in California" and asks that the Court permit it to conduct

discovery into the sales of the accused product in California.   This request misses the point.  This

factor focuses on activity directed at California and harm, if any, felt in California.  The harm, in

theory, from false patent marking, is that competitors are dissuaded from entering the market and

inventors might forego research.  *See Forest Group*, 590 F.3d at 1302-03.  This stifling of

competition, if it occurs, theoretically harms consumers by keeping prices high.  Here, however,

S.F. Tech has not pointed to any competitors with Medtech in the market for pain-relieving spray

or antibacterial pain-relieving spray that are located in California.  Nor has it alleged a lack of

competing branded or "generic" pain relieving sprays practicing the expired patent.  Nor has it

offered any evidence that the price of the accused Medtech products in California is more than that

of competing unpatented products.  The "harm" from sales in California is completely

hypothetical.  Having failed to even undertake to make such a basic showing, S.F. Tech should not

now be allowed to conduct discovery solely for the purpose of avoiding transfer of the case to the

Southern District of New York.

### C.     SF Tech Admits That There Are No Relevant Contracts and Has Not Articulated How This Factor Weighs Against Transfer.

S.F. Tech states that the lack of contracts with forum selection clauses between the plaintiff

and the various defendants weighs against transfer.  S.F. Tech cites no authority for this

conclusion.  Because there are no contracts, there are likewise no contracts that provide that venue

in Northern California is present for a dispute between S.F. Tech and Medtech or that this judicial

district is a convenient forum.  At most, this factor is neutral.

### D.     S.F. Tech's Claim To Be Entitled To Attorneys Fees Under California's Public Interest Litigation Statute Can Easily Be Resolved By a New York Court.

S.F. Tech asserts in its Opposition that its action raises a question of California state law –

whether S.F. Tech will be able to recover its attorneys fees under California's public interest

litigation statute.  *See* S.F. Tech's Opposition to Motions Seeking Transfer of Venue, Docket No. 214 at 2:14-15.  First, S.F. Tech failed to seek attorneys fees under California's public interest statute in its "Demand for Judgment" or elsewhere in its complaint.  Second, as S.F. Tech observes, a *qui tam* plaintiff's share of penalties it sues to collect on behalf of the government is intended to motivate it to bring suits despite the cost of litigation.  *Id.* at 3:4-11, quoting *Forest Group*, 590 F.3d at 1303-04.  Allowing "public interest" attorneys fees in addition to a fifty percent share of all penalties collected would give S.F. Tech and other potential plaintiffs greater incentive to bring false marking actions against companies located in other states in California.  Third, while federal courts in California have applied California's public interest statute, the Southern District of New York has access to the same statutes and precedents as this Court and is not at any disadvantage in deciding whether S.F. Tech, if successful, is entitled to attorneys fees.  This factor is neutral or, at most, weighs only slightly against transfer.

### E.   Plaintiff's Choice of Forum Is Entitled To Little Deference.

S.F. Tech does not deny that its choice of this forum is largely fortuitous and for its attorneys' convenience.   Instead, it urges that because the Federal Circuit has held that Congress intended to motivate "marking trolls" to bring litigation on behalf of the government, a marking troll's choice of forum should likewise be given great weight to avoid discouraging *qui tam* litigation.   This argument lacks merit and has no support in the case law.  The *Forest Group* decision expressly provides that the *qui tam* relator's share of the penalties *per article* for false marking is enough to cover the "expense of patent litigation" and still provide sufficient financial motivation for plaintiffs to bring suit.  590 F.3d at 1303-04.   If S.F. Tech views half the penalties it sues to collect from Medtech as insufficient motivation to maintaining a suit in the Southern District of New York, it can dismiss its claims or recruit counsel in New York to assist.  *See, e.g., Stauffer v. Brooks Bros., Inc.* 615 F.Supp.2d 248, 255 (S.D.N.Y. 2009).  There is simply no basis to give more deference to the choice of forum of a plaintiff in false marking suits than is given to any other plaintiff's choice of forum.

1

2

### F.     S.F. Tech's Cost of Litigation Is Self-Inflicted and Does Not Weigh Against Transfer

3

4

S.F. Tech argues, citing the declaration of its President and CEO, Dan Mount (also the

senior partner in the firm representing plaintiff), that S.F. Tech has no other officers and

5

employees and that "as a small company, S.F. Tech would be subject to an extremely high burden

6

if six defendants were severed from this case and transferred to various districts across the

7

country" because "at this time" S.F. Tech lacks the resources to pay for such travel." *See* Docket

8

No. 216 at ¶ 3.  Mr. Mount's biography on S.F. Tech's counsel's web site, however, describes the

declarant as "a frequent traveler to Asia for business and pleasure" who is also a licensed pilot.

9

*See* http://www.mount.com/index.cfm?page=attorney&pageid=85&bio=7&languageid_select=

10

Plaintiff's counsel/Plaintiff cannot decide in one moment to launch a significant campaign of

11

offensive litigation and in the next breath cry how difficult their chosen path is.

12

13

As S.F. Tech's citation of *Forest Group* illustrates, *qui tam* plaintiffs such as S.F. Tech

make the choice to "incur the enormous expense of patent litigation" in order to split the penalties.

14

*Forest Group*, 590 F.3d at 1303-1304.  Congress determined that the penalties are sufficient

15

motivation.  If S.F. Tech decides it does not want to invest its time against out-of-state defendants

16

in different districts "at this time" it can associate New York counsel or dismiss such claims.   This

17

is not the situation where a plaintiff itself has been injured and its only recourse is against an out-

18

of-state tortfeasor.   This Court is under no obligation to put a thumb on the scale to help a *qui tam*

19

plaintiff stay within its litigation budget.  To the contrary, fairness calls for this case to be

20

transferred.

21

22

For the reasons discussed in Section II, judicial economy weighs in favor of transfer.

Because the common issues are issues of law, and false marking actions are already pending

23

against other companies in the Southern District of New York, different courts are already

24

deciding these common legal issues.  Judicial economy favors New York's federal courts deciding

25

false marking claims against the companies in their own districts, and California courts deciding

26

false marking cases in which both parties are found in California.

27

S.F. Tech cites *IP Co. v. Oncor Electric Delivery*, a unreported order from the Eastern

28

District of Texas, as support for denying transfer of venue.  That case, however, was a patent infringement action in which the same patent was asserted against all five defendants, so there were genuine common issues of fact and a genuine risk of duplicative discovery from the inventors, prosecuting attorneys and plaintiff if the claim against one defendant were transferred. *IP Co. v. Oncor Elec. Delivery*, E.D. Tex., Case No. 2:09-cv-00037-DF at 7-8.  As such, *IP Co.* does not support denying Medtech's motion to transfer.  S.F. Tech also ignores the decision of Judge Seeborg of this Court in *S.F. Tech v. Adobe et al*, finding the right of the out-of-state defendants to have the claims against them transferred to their home venues "abundantly clear; it was only by virtue of their improper joinder that there was any bases to assert this was a proper venue in the first instance."  2010 WL 1463571, at * 3 (N.D. Cal. April 13, 2010).  Indeed, in the *Adobe* case, Judge Seeborg observed that "at oral argument, S.F. Tech expressly acknowledged that there is no basis to deny transfer after severance."  *Id.* at 4:1-2.

## G.     S.F. Tech's Reliance on Non-Party Witnesses in California Is Unpersuasive

As discussed above, S.F. Tech points to various employees of local Walgreens and Target stores as nonparty witnesses who live in or near San Jose, California.  S.F. Tech asserts that it may use the testimony of such witnesses to show that defendants' accused products arrive at national retail stores frequently and in high volumes and then are sold to the public quickly after the retail store receives them.   This testimony is urged to be important because defendants might argue that the date that a product is found on a retail shelf does not suggest that it was marked after its expiration.  Opp'n at 6:10-19.  This argument lacks merit.  First, S.F. Tech's allegation of false marking against Medtech specifically pleads that "labels on canisters of Dermoplast Pain Relieving Spray product are … "marked © 2004 distributed by Medtech Products, Inc.'" and "labels on Dermoplast Antibacterial Pain Relieving Spray are also marked © 2005 Distributed by Medtech Products Inc."  On this basis, S.F. Tech's complaint alleges that Medtech made decisions to mark in 2004 and 2005 after the marked patent expired in 2003.  Discovery related to when Medtech sold products marked with the expired patent will focus on Medtech's headquarters in New York.  Plaintiff is not pursuing a claim based upon the sale of falsely marked products to

Walgreens and Target. Instead, the theory of its case focuses on all sales by Medtech to any entity around the country. To the extent that the frequency of the arrival of Medtech products at retail stores and how quickly they are sold to the public are really subjects for discovery, such discovery can be obtained from either Medtech or managers, stock clerks and pharmacists at Target and Walgreens stores in the Southern District of New York who have similar knowledge to that of their San Jose counterparts. Thus, there would be no need to compel San Jose retail store employees to travel to New York to testify. S.F. Tech does not dispute that Medtech has identified witnesses who are located in New York. Its only response is that these witnesses are within the defendant's control and their attendance in California can be procured. This is correct, but ignores that the *convenience* of witnesses, not merely the ability to procure their testimony, is the relevant consideration in determining whether to transfer.

### H.    The Sources of Proof Located In California Are Plainly Cumulative to Sources of Proof in New York.

Finally, S.F. Tech alleges that physical samples of defendants accused products, packaging, labels and advertising associated with those products, in the San Jose area, are "the only ones known to S.F. Tech at this time and that this factor "may" weigh heavily against transfer. S.F. Tech's Opposition is simply wrong when it states that it needs discovery because "it is unclear from [defendants'] declarations where most such materials are stored." Opp'n at 7:9-13. On the contrary, Medtech's declarant, Mr. Connors, has testified that all decisions regarding United States product packaging and design are made by Medtech's management in its Irvington, New York headquarters, decisions relating to the sale and promotion of products are made or managed from Medtech's New York headquarters, most, if not all documents relating to sales, marketing and packaging of the Dermoplast® products are located in New York and no documents relevant to this case are located in California. *See* Connors Decl., Docket No. 176 at ¶¶ 8-10. As such, this factor weighs in favor of transfer.

1

## IV.    CONCLUSION

2      For the foregoing reasons as well as those set out in Medtech's opening brief, Plaintiff's

3   claim against Medtech should be severed from the claims against of the other defendants and

4   transferred to the U.S. District Court for the Southern District of New York.

5                                    Respectfully submitted,

6   DATED:  June 24, 2010              ALSTON & BIRD LLP

7

8                                    By: _____ */s/ Randall L. Allen*_____
                                          Randall L. Allen
9                                    Attorneys for Defendant
                                     MEDTECH PRODUCTS INC.
10  LEGAL02/31977930v1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28