**E-Filed 7/19/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO TECHNOLOGY, Inc., | Case Number 10-CV-00966 JF (PVT) |
| Plaintiff, | **ORDER RE PENDING MOTIONS** |
| v. | |
| THE GLAD PRODUCTS COMPANY, BAJER DESIGN & MARKETING INC., BAYER CORPORATION, BRIGHT IMAGE CORPORATION, CHURCH & DWIGHT CO. INC., COLGATE-PALMOLIVE COMPANY, COMBE INCORPORATED, THE DIAL CORPORATION, EXERGEN CORPORATION, GLAXOSMITHKLINE LLC, HI-TECH PHARMACAL CO. INC., JOHNSON PRODUCTS COMPANY INC., MAYBELLINE LLC, MCNEIL-PPC INC., MEDTECH PRODUCTS INC., PLAYTEX PRODUCTS INC., RECKITT BENCKISER INC., ROCHE DIAGNOSTICS CORPORATION, SOFTSHEEN-CARSON LLC, SUN PRODUCTS CORPORATION, SUNSTAR AMERICAS INC., | Re: Docket Nos. 76, 78, 83, 94, 127, 142, 144, 147, 155, 156, 159, 162, 165, 166, 168, 170, 175, 177, 178, 179, 180, 193, 194, 280 |
| Defendants. | |

## I. BACKGROUND

Plaintiff San Francisco Technology Inc. ("Plaintiff") is a Delaware corporation with its principal place of business in San Jose, California. Complaint ¶ 2. Plaintiff makes no allegations with respect to the type of business it practices. Defendants are twenty-one wholly-unrelated companies that make and sell wholly-unrelated products, they include: The Glad Products Company ("Glad"), Bajer Design & Marketing Inc. ("Bajer"), Bayer Corporation

("Bayer"), Bright Image Corporation[1], Church & Dwight Co. Inc. ("Church & Dwight"), Colgate-Palmolive Company ("Colgate"), Combe Incorporated ("Combe"), The Dial Corporation ("Dial"), Exergen Corporation ("Exergen"), GlaxoSmithKline LLC ("GSK"), Hi-Tech Pharmacal Co. Inc. ("Hi-Tech"), Johnson Products Company Inc. ("Johnson Products"), Maybelline LLC ("Maybelline"), McNeil-PPC Inc. ("McNeil"), Medtech Products Inc. ("Medtech"), Playtex Products Inc. ("Playtex"), Reckitt Benckiser Inc. ("Reckitt"), Roche Diagnostics Corporation ("Roche"), SoftSheen-Carson LLC ("SoftSheen"), Sun Products Corporation ("Sun Products"), and Sunstar Americas Inc. ("Sunstar"). Plaintiff alleges that each of the twenty-one Defendants makes and sells products that it has marked with one or more expired patents. These products range from collapsible laundry hampers (Bajer) to lighting products (Bright Image) to toothpaste (Church & Dwight and Colgate) to mascara (Maybelline) to fabric softener (Sun Products).

Plaintiff also claims, upon information and belief, that Defendants "marked [their] products with patents to induce the public to believe that each such product is protected by each patent listed and with knowledge that nothing is protected by an expired patent." *Id.* ¶¶ 53, 57, 61, 66, 70, 74, 78, 82, 86, 94, 98, 102, 107, 111, 115, 120, 124, 128, 132, 136. Finally, Plaintiff alleges that Defendants marked their products with expired patents with the intent to deceive the public. *Id.*

Plaintiff filed the instant action on March 5, 2010, alleging that each Defendant has violated 35 U.S.C. § 292 by marking its own products with expired patent numbers. Plaintiff does not claim to be in competition with any Defendant. Instead, it brings this action as a *qui tam* proceeding to recover civil fines on behalf of the United States government. Defendants have filed in excess of twenty separate motions. Almost all of the motions fall into one of four categories: (1) motions to dismiss for lack of standing; (2) motions to dismiss for failure to state a claim with the required particularity; (3) motions to sever and to transfer venue; and (4) motions to stay pending a decision by the Federal Circuit in *Stauffer v. Brooks Brothers, Inc.*,

---

[1] On June 14, 2010, the Clerk entered default as to Bright Image.

Case Number 10-CV-00966 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)

615 F.Supp.2d 248 (S.D.N.Y. 2009).[2]  On May 28 and June 22, 2010, the Court entered

stipulated orders between Plaintiff and seven of the Defendants – Glad, Bajer, Colgate, Combe,

Dial, Johnson Products, and Reckitt Benckiser – staying all proceedings until the Federal Circuit

issues a final decision in *Stauffer.  See* Dkt. Nos. 189, 238.  Accordingly, this order addresses

only those motions filed by Defendants that have not so stipulated.

## II. MOTIONS TO STAY

### A. Legal Standard

The power to grant a stay in pending litigation is incidental to the power inherent in every

court to control the disposition of the cases on its docket.  *Landis v. North American Co.,* 299

U.S. 248, 254-55, 57 S.Ct. 163, 81, L.Ed. 153 (1936).  In an exercise of that discretion, the Court

must weigh "the competing interests which will be affected by the granting or refusal to grant a

stay." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005), citing *CMAX Inc. v. Hall,*

300 F.2d 265, 268 (9th Cir. 1962).  "Among those competing interests are the possible damage

which may result from the granting of a stay, the hardship or inequity which a party may suffer in

being required to go forward, and the orderly course of justice measured in terms of the

simplifying or complicating of issues, proof, and questions of law which could be expected to

result from a stay."  *Id.*  "The proponent of a stay bears the burden of establishing its need."

*Clinton v. Jones,* 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).  "'If there is even

---

[2]  Some of the Defendants also assert individual bases for dismissal: (1) Bayer moves to dismiss for failure to join an indispensable party pursuant to Rule 12(b)(7); (2) a few Defendants argue that Section 292 violates the Take Care clause of Article II of the Constitution so far as it permits assignment of a sovereign injury that may be said to arise from the violation of laws to a *qui tam* relator; (3) SoftSheen moves to dismiss pursuant to the "first to file rule;" (4) Roche moves to dismiss for failure to join an indispensable party pursuant to Rule 12(b)(7) and under the "first to file" rule; (5) Exergen moves to dismiss based upon its assertion that Plaintiff lacks standing because another *qui tam* relator asserted the same claim against it in an earlier-filed action; and (6) a number of Defendants contend that their products are not "unpatented" within the meaning of § 292 because the markings list some patents that are expired and some that are not.

On July 15, 2010, Plaintiff voluntarily dismissed Roche without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  Accordingly, Roche's pending motions to stay, dismiss, sever, and transfer will be terminated as moot.

a fair possibility that the stay ... will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity" in being required to go forward. *Lockyer,* 398 F.3d at 1112, quoting *Landis,* 299 U.S. at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. *Id.* at 1109-10, quoting *Landis,* 299 U.S. at 255.

**B. Discussion**

Bayer, Church & Dwight, Exergen, GSK, Hi-Tech, Maybelline, McNeil, Medtech, SoftSheen, Sun Products, and Sunstar move to dismiss the instant action on the basis of Plaintiff's lack of standing under Article III of the United States Constitution. Defendants contend that Plaintiff has not alleged that it has suffered an injury-in-fact sufficient to confer standing. The same Defendants also move to stay the instant action either in the first instance or in the alternative pending the Federal Circuit's decision in *Stauffer.*

District courts have reached different conclusions with respect to the identical standing inquiry presented here. In *Pequignot v. Solo Cup Co.*, the court held that a private, non-competitor plaintiff suing under 35 U.S.C. § 292 ordinarily would lack Article III standing, but for the *qui tam*[3] nature of the statute. 640 F.Supp.2d 714, 718-724 (E.D. Va. 2009) (*Pequignot I*). The court reasoned that the plaintiff's status as a *qui tam* relator made him "a partial assignee of the government's claims" and conferred standing upon him. *Id.* at 724. In *Stauffer*, the district court reached the opposite conclusion, concluding that the lack of an actual injury to the plaintiff, the government, or the public at large required dismissal of the action. *Stauffer*, 615 F.Supp.2d at 255 ("[T]he complaint fails to allege with any specificity an actual injury to any individual competitor, to the market. . . , or to any aspect of the United States economy. That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, is purely speculative and

---

[3] "A *qui tam* statute authorizes a private person, known alternatively as a 'relator' or 'informer,' to bring suit on behalf of the government and to share in the financial recovery." *Pequignot I*, 650 F.Supp.2d at 719. "The Supreme Court has identified three *qui tam* statutes that remain in force in the United States [one of which is] 35 U.S.C. § 292, the false patent marking statute at issue here. . ." *Id.* at 719-20.

4

plainly insufficient to support standing."), citing *Summers v. Earth Island Inst.,* --- U.S. ----, 129 S.Ct. 1142, 1151-52, 173 L.Ed.2d 1 (2009) (citations omitted) (finding "some day" harms "without any description of concrete plans, or indeed any specification of *when* the some day will be-do not support a finding of the 'actual or imminent' injury that our cases require"); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 566, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted) ("Standing is not 'an ingenious academic exercise in the conceivable' ... [but] requires ... perceptible harm." ).

As Judge Seeborg concluded in a nearly identical case brought by Plaintiff in this district against fourteen different defendants, "there appears to be little dispute that if the Federal Circuit affirms the decision in *Stauffer* there likely will be no way to distinguish it or to otherwise avoid its application to this case.  Conversely**,** should *Stauffer* be reversed, that likely will preclude any further argument that SF Tech lacks standing here." *San Francisco Technology, Inc. v. Adobe Systems Incorporated, et al.*, No. 10-01652 RS, 2010 WL 1640397, at *3 (N.D. Cal. Apr. 19, 2010).  On this basis, as well as Plaintiff's failure to identify any particular prejudice it would suffer from a stay, Judge Seeborg stayed the action.  *Id.* ("As SF Tech points out, it is not the general rule that a stay will be granted simply because some appellate decision is pending that may have some bearing on the case at hand.  In this instance, however, a stay pending a decision in the *Stauffer* appeal appears warranted.").

Subsequent to Judge Seeborg's order in *Adobe*, the Federal Circuit affirmed the district court's decision in *Pequignot I.  Pequignot v. Solo Cup*, — F.3d —, 2010 WL 2346649, at *8 (Fed. Cir. June 10, 2010) (*Pequignot II*) (affirming the court's grant of summary judgment in favor of defendant based upon Plaintiff's failure to "raise a genuine issue of material fact as to a deceptive purpose.").  However, notwithstanding the district court's express determination that plaintiff had standing to bring a *qui tam* action, the standing issue was not raised in the *Pequignot* appeal.  Not surprisingly, as Judge Seeborg had predicted, the Federal Circuit's opinion in *Pequignot* did not mention the standing issue, let alone "include a direct holding disposing of the standing issue one way or the other."  *Adobe*, 2010 WL 1640397, at *3 n. 5 (staying the action pending a ruling by the Federal Circuit in *Stauffer*, rather than *Pequignot I*).  Plaintiff claims that

the Federal Circuit held affirmatively that the district court had subject matter jurisdiction. Opposition to Motions to Stay at 1, citing *Pequignot II*, 2010 WL 2346649, at *4. This is not so. Plaintiff confuses Article III subject matter jurisdiction with the Federal Circuit's conclusion that it had *appellate* jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). *Pequignot II*, 2010 WL 2346649, at *4 ("Pequignot timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).").[4]

Moreover, despite its view of *Pequignot II*, Plaintiff concedes that "the Federal Circuit will more squarely address the standing question in the appeal of *Stauffer v. Brooks Brothers*." Opposition to Motions to Stay at 1. In fact, knowing that a decision in *Pequignot II* was forthcoming, Plaintiff stipulated to a stay pending the Federal Circuit's disposition in *Stauffer* as to seven of the defendants in the instant action.[5] Plaintiff does not argue that it will suffer any particular prejudice if the action is stayed. On June 21, 2010, the Federal Circuit announced that it will hear oral arguments in *Stauffer* on August 3, 2010. The Federal Circuit's published statistics indicate that the median time between oral argument and issuance of an opinion is less than two months. Declaration of Jason White in Support of GSK's Motion to Stay, Ex. 1 (Federal Circuit Caseload Analysis FY 2008 - FY 2009). "A mere delay in any eventual monetary recovery is not sufficient to require going forward where the threshold issue of standing can be conclusively resolved by waiting for the Federal Circuit to rule." *Adobe*, 2010 WL 1640397, at *4. Accordingly, because a stay will promote judicial economy, prevent unnecessary expenditure of resources and cause no prejudice to Plaintiff, the Court will grant the instant motions to stay

---

[4] Plaintiff also argues that the Federal Circuit resolved the issue of *qui tam* standing in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009). However, like *Pequignot II*, *Forest Group* does not address standing. *Forest Group* involved two competitors and allegations of competitive harm. While the Federal Circuit did observe that Section 292 permitted "plaintiffs who have not suffered any direct harm" to bring an action as *qui tam* relators, it did not discuss actions in which a *qui tam* relator does not plead an actual injury to the government or the public at large. *Id.* at 1303.

[5] The Court also notes that Plaintiff's stipulation with Dial and Johnson Products to stay all proceedings pending a final decision in *Stauffer* is dated one day after the Federal Circuit's decision in *Pequignot*.

6

with respect to any Defendant against whom the instant claims are not transferred, *see infra* V, and except for the motion brought by Exergen, *see infra* III, and terminate without prejudice the pending motions to dismiss.[6]  The motions to dismiss may be renewed as appropriate after the Federal Circuit issues a decision in *Stauffer.*

### III. EXERGEN'S MOTION TO DISMISS

**A. Legal Standard**

Because Article III standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . .".  *White v. Leem,* 227 F.3d 1214, 1242 (9th Cir. 2002). "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air For Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.  *See id.*  It need not presume the truthfulness of the plaintiff's allegations. *White,* 227 F.3d at 1242, citing *Gemtel Corp. v. Community Redevelopment Agency,* 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

**B. Discussion**

Exergen argues that even if *Stauffer* ultimately supports Plaintiff's position with respect to standing, an earlier false marking suit that is inclusive of Plaintiff's claims was filed against it in Delaware by a different *qui tam* relator, Jennifer L. Brinkmeier, thus depriving Plaintiff of standing to sue Exergen here.  Exergen reasons that Plaintiff's sole claim to standing is as an assignee of a false marking claim originally accruing to the United States government and that

---

[6]  On July 1, 2010, Plaintiff filed a statement of recent decision with respect to an order issued in the Northern District of Texas, *Patent Compliance Group Inc., v. Interdesign, Inc.,* 3:10-CV-0404-P, slip op. (N.D. Tex. June 28, 2010).  In that case, the court denied defendant's motion to stay pending the Federal Circuit's disposition in *Stauffer* and determined that plaintiff had Article III standing.  The court determined that "the law is sufficiently in place for adjudication", *id.* at 14, but also distinguished *Stauffer,* noting that the plaintiff's complaint included allegations of injury to the government including "marketplace competition deterrence, harm to the [plaintiff], harm to the United States, and harm to the public by misleading impressions." *Id.* at 10.  *Patent Compliance* thus is distinguishable from the issue on appeal in *Stauffer* and from the instant action.

the earlier lawsuit filed in Delaware effected an assignment of that claim to Brinkmeier.  Plaintiff disagrees claiming that Plaintiff and Brinkmeier sued Exergen for different markings.

Brinkmeier's action alleges that Exergen marks its products, including its temporal artery thermometers, with the following expired U.S. Patent Numbers: 4,636,091, 5,012,813; 5,199,436; 5,653,238; and 6,047,205.  Kent Decl., Ex. A (Complaint) ¶¶ 11-15, 36-37.  Plaintiff alleges that Exergen marks its Comfort Scanner thermometer with four of the same expired patent numbers.  Complaint ¶ 84 (alleging that "U.S. Patents Nos. 4,636,091, 5,012,813, 5,199,436, and 5,653,238 expired no later than 6/28/2005, 12/7/2008, 2/20/2008, 12/7/2008, respectively.").  While Plaintiff acknowledges that the technology of the products at issue in the two cases likely is the same, it contends that the packaging of the Comfort Scanner thermometer sold at Walgreens is different.  The Court notes that Exergen's CEO, Francesco Pompei, admits that there is special packaging for the Comfort Scanner thermometer sold by Walgreens.  Pompei Decl. ¶ 6 ("The Exergen Temporal Artery Thermometer that is the subject of this lawsuit is known as the 'Comfort Scanner,' which is a TAT-2000C model thermometer specially branded and packaged for sale at Walgreen's stores.").  However, Brinkmeier's complaint, while more general than Plaintiff's with respect to packaging, in no way excludes the marks or packaging that are the subject of the instant suit.  Having examined both complaints, the Court concludes the claims asserted by Plaintiff against Exergen are within the scope of those alleged by Brinkmeier in her earlier-filed action.  For this reason, it appears that even assuming standing generally, the claims of the United States government previously were assigned to Brinkmeier depriving Plaintiff of standing to assert them here.

## IV. MOTIONS TO SEVER

Almost all of the Defendants move to sever the claims against them pursuant to Fed. R. Civ. P. 21 based upon their assertion that their joinder in a single action is improper.  A plaintiff may join persons in one action as defendants if:

> (A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*
> (B) any question of law or fact common to all defendants will arise in the action.

8

Fed. R. Civ. P. 20(a)(2) (emphasis added). In *Adobe,* the court confronted the identical inquiry and concluded that "there simply is no basis to join these [type of] defendants in a single suit." *Adobe*, 2010 WL 1640397, at *2. This Court agrees.

The complaint alleges no connection or relationship between any of the defendants or their products.[7] Rather, the only commonality among the Defendants is that each of them is alleged to have violated 35 U.S.C. § 292. Rule 20 permits joinder only when there are questions of law or fact common to all defendants that will arise in the action *and* the claims alleged against each of the separate defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences." As explained in *Adobe*, "[t]he requirements of [Rule 20(a)(2)] (A) and (B) are conjunctive, both must be satisfied. There is no tenable argument that the claims alleged against each of the these separate defendants arise out of the 'same transaction, occurrence, or series of transactions or occurrences.'" *Adobe*, 2010 WL 1640397, at *1. Because Plaintiff fails to allege that its claims against Defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," the Court will grant the instant motions to sever. The Court also will sever the claims against the non-moving Defendants pursuant to Fed. R. Civ. P. 21. *Id.* ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

---

[7] Plaintiff contends that "[s]ince the harm being redressed in this action is the same for all the defendants, the claims arise out of the same 'series of transactions or occurrences.'" Opposition to Motions Seeking Severance at 2. However, Plaintiff fails to allege any such harm in its complaint, and the Court is not convinced that any potential harm suffered as a result of the various Defendants' disconnected conduct would be common. In its reply brief, Church & Dwight argues that Plaintiff's position is "akin to asserting that because Heinz has an alleged monopoly on ketchup, Gerber has an alleged monopoly on baby food, and Kleenex has an alleged monopoly on tissues, a plaintiff can join all three in a single lawsuit simply because each allegedly causes high prices at the supermarket." Church & Dwight Reply at 2.

Plaintiff also contends that "[a]dditional common facts underlying the claims and defenses may exist, but the defendants have stymied efforts to identify them by refusing to participate substantively in the pre-CMC conference required by Rule 26(f) and this court's local rules." *Id.* This argument fails for two reasons. First, the Rule 26(f) conference is not intended to provide a plaintiff with additional facts that would enable it to satisfy its pleading standards. Second, Plaintiff fails to identify any plausible common facts or defenses that may exist among the twenty-one separately owned and operated Defendant companies.

9

### V. MOTIONS TO TRANSFER

#### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the Ninth Circuit, a motion for transfer pursuant to § 1404(a) lies within the discretion of the district court and depends on the facts of each particular case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Such factors may include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones,* 211 F.3d at 498-99. *See also Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 904-05 (Fed. Cir. 2008). The moving party bears the burden of showing that transfer is appropriate. *Jones*, 211 F.3d at 499.

#### B. Discussion

Defendants Church & Dwight, Hi-Tech, Medtech, and Sunstar, each move separately, while Maybelline and SoftSheen move jointly, to transfer the claims against them pursuant to Section 1404(a). Plaintiff presents its arguments in opposition to these motions in one consolidated opposition brief. The Court applies the *Jones* factors to each of the moving Defendants' motions below.[8]

---

[8] The Supreme Court has held that "[a] district court [] may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem*

10

### 1. The location where the relevant agreements were negotiated and executed

Because there are no relevant contracts or forum selection clauses between Plaintiff and any of the moving Defendants, these factors do not weigh in favor of or against transferring the action.

### 2. The state most familiar with the governing law

The second *Jones* factor, "the state that is most familiar with the governing law," also is a neutral factor. Questions of federal law may be applied by any federal court, and this Court is not necessarily better able to apply the false marking statute than federal courts in other districts. Plaintiff contends that the instant case also raises a question of California state law – whether Plaintiff will be entitled to recover its attorney's fees under California's public interest litigation statute. Opposition to Motions Seeking Transfer of Venue at 2, citing Cal. Civ. Proc. Code § 1021.5 (providing that "upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest. . ."). Plaintiff argues that this factor "weighs heavily against transfer" because a district court sitting in another state is likely to be unfamiliar with § 1021.5. However, as Defendants point out, the complaint neither makes reference to § 1021.5 nor seeks attorney's fees in its prayer for relief.

Moreover, Plaintiff's argument that § 1021.5 supports a California venue is circular.

_____

*International Co. v. Malaysia International Shipping Corp.,* 549 U.S. 422, 423, 127 S.Ct. 1184, 1192, 167 L.Ed.2d 15 (2007). The Supreme Court premised this holding upon its conclusion that *"[f]orum non conveniens* is a nonmerits ground for dismissal." *Id.* Accordingly, the Court's conclusion in *Sinochem* applies equally within the context of a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See In re: Limitnone, LLC,* 551 F.3d 572, 577 (7th Cir. 2008) (citations omitted)("as § 1404(a) is nothing more than a codification of the traditional *forum non conveniens* rules without the attendant disadvantages of outright dismissal ... it is appropriate to apply the same rules regarding the necessity of establishing jurisdiction to both."); *Pub. Employees' Ret. Sys. of Miss. v. Morgan Stanley,* 605 F.Supp.2d 1073, 1075 (C.D. Cal. 2009) (citing *Sinochem* and *Limitnone* for the proposition that a "decision to transfer for inconvenient forum is not a decision on the merits and therefore does not require a finding of jurisdiction."). Accordingly, because the jurisdictional question here is not "readily determine[d]," but one of first impression currently pending before the Federal Circuit, it is proper for this Court to address the Defendants' motions to transfer prior to resolving jurisdiction. *Sinochem,* 549 U.S. at 425.

11

Plaintiff contends that § 1021.5 applies because the instant action was filed in California, *and* that because § 1021.5 might be applicable, the Court must retain the case in California. In any event, it would be premature to determine whether the statute applies, as a claim for attorney's fees could not be considered by the Court unless and until Plaintiff prevailed on the merits.[9]

### 3. Plaintiff's choice of forum

On a § 1404(a) motion, a plaintiff's choice of forum generally is accorded substantial weight, and a court will not transfer a case unless the "convenience" and "justice" factors tip strongly in favor of the transfer. *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002), citing *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir. 1985). Defendants contend that while a plaintiff's choice of forum generally is a factor that weighs against transfer, the Court should accord little to no weight to Plaintiff's choice of forum in a *qui tam* action.

Defendants argue that "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the. . .cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened," *Johns v. Panera Bread Co.*, No. 08-1071, 2008 WL 2811827, at *2 (N.D. Cal. July 21, 2008), quoting *Koster v.(Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). In *Johns*, the district court analyzed the plaintiff's choice of forum within the context of a class action, while in *Koster*, the Supreme Court determined that this factor was accorded less weight when the plaintiff sought relief in a derivative action. While the instant scenario is a *qui tam* action,

---

[9] It also appears that the instant action is not the type of public interest litigation that California intended to encourage in enacting § 1021.5. *Compare Unocal Corp. v. United States*, 222 F.3d 528, 544 (9th Cir. 2000) (citation and quotation marks omitted) ("The purpose of the 'private attorney general' doctrine is to encourage suits of societal importance which private parties would not otherwise have an incentive to pursue."), *with Pequignot II,* 2010 WL 2346649, at *2 n.1 (noting that plaintiff, in an action similar to this one, sought approximately $5.4 trillion of which fifty percent would go to the United States and the remaining amount would go to Plaintiff) and 35 U.S.C. § 285 (providing that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" in a false marking action).

rather than a class or derivative action, the Supreme Court's reasoning is arguably applicable here. Plaintiff is one of "hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the. . . cause of action and all of whom could with equal show of right go into their many home courts." *Id.*

Moreover, there is substantial persuasive authority supporting Defendants' position that a plaintiff's choice of forum is entitled to less weight in a *qui tam* action. *Harrington v. Ciba Vision Corp.*, NO. 3:08-CV-00251-FDW, 2008 WL 2893098, at *1 (W.D.N.C., July 23, 2008) (holding that a plaintiff's choice of forum may be accorded less weight in the context of a *qui tam* false marking action); *U.S., ex rel. Roop v. Arkray USA,* Inc., No. 1:04 CV 87-M-D, 2007 WL 844691, at *2 (N.D. Miss. Mar. 19, 2007) (noting that "federal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions."), citing *U.S. ex rel. Adrian v. Regents of University of California,* No. C 99-3864 THE, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002) (emphasis in original) ("a plaintiff's choice of forum is *not* given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government."); *U.S. ex rel. Haight v. Catholic Healthcare West*, No. C-01-1202 PJH, 2001 WL 1463792, at *2 (N.D. Cal. Nov. 9, 2001) (holding that the fact that "the United States, rather than relators, is the real party in interest ... lessen[ed] the deference traditionally accorded the plaintiffs' choice of forum."); *U.S. ex rel. Swan v. Covenant Care, Inc.,* No. C-97-3814 MHP, 1999 WL 760610, at *3 (N.D. Cal. Sept. 21, 1999) (holding that "plaintiffs here are also suing in the name of another, the United States" and that "thus, plaintiff's choice of forum is entitled to little consideration."). *U.S., ex rel. Penizotto v. Bates East Corp.,* No. CIV.A. 94-3626, 1996 WL 417172, at *2 (E.D. Pa. July 18, 1996); *United States ex rel. LaValley v. First Nat'l Bank of Boston,* 625 F.Supp. 591, 594 (D.N.H. 1985) (plaintiffs' choice of forum "should be given relatively little weight" in a *qui tam* action).[10]

---

[10] While *Harrington* is the only case that involved a *qui tam* action concerning the *false marking statute*, Plaintiff makes no attempt to distinguish any of the above cited authority from the action presently before the Court.

13

Plaintiff does not attempt to distinguish or even acknowledge any of this case authority. Instead, it argues that according less weight to its choice of forum would conflict with the holding of the Federal Circuit in *Forest Group.* The relevant language from the court's opinion is as follows:

> Rather than discourage such activities, the false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking. The fact that the statute provides for *qui tam* actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs – who would share in the penalty – to bring suit. It seems unlikely that any *qui tam* plaintiffs would incur the enormous expense of patent litigation in order to split a $500 fine with the government. Forest's per decision construction is at odds with the clear language of the statute and, moreover, would render the statute completely ineffective.

590 F.3d at 1303-1304. However, while the Federal Circuit defined "an offense" based partly upon its conclusion that Congress wished to permit, rather than discourage private individuals from bringing *qui tam* actions, nothing in the *Forest Group* opinion supports the position that a *qui tam* plaintiff's choice of forum must be given the same weight as that of a typical plaintiff. While the statute explicitly considers a financial incentive for *qui tam* relators, the same cannot be said with respect to choice of forum. Accordingly, the Court concludes that this factor is not entitled to the considerable weight it typically receives, and the Court finds that this factor weighs only slightly against transfer.[11]

**4. Respective parties' contacts with the forum**

While acknowledging that their products are sold in this district, Defendants contend that their contact with the Northern District of California is limited and that this factor weighs in favor of transfer. Declaration of Frederick G. Herold in Support of Church & Dwight's Motions

---

[11]   Defendants also argue that Plaintiff's choice of forum should not be afforded any weight because "[c]ourts generally do not consider the convenience of counsel to be a relevant factor in considering a motion to transfer venue." *Zimpelman v. Progressive N. Ins. Co.*, 2010 WL 135325, at *1 (N.D. Cal. Jan. 8, 2010), citing *In re Horseshoe Entertainment,* 337 F.3d 429, 434 (5th Cir.2003); *Solomon v. Continental Am. Life Ins. Co.,* 472 F.2d 1043, 1047 (3rd Cir.1973). Here, Plaintiff's president (and only officer and only employee) is Dan Mount, who is also the first name partner in the plaintiff's law firm, Mount and Stoelker. *See* Declaration of Dan Mount ¶ 3. Plaintiff and its law firm share the same address. *Id.,* Ex. A. Finally, Plaintiff's proposed witnesses do not include Mount. Fingerman Decl. ¶ 2.

14

("Herold Decl."), Ex. B (10-K) (indicating that Church & Dwight's executive offices and primary research and development facilities are located in Princeton, New Jersey, that its largest manufacturing facility (450,000 square feet) and product warehouse (600,000 square feet) are in Pennsylvania, and that it only has a small factory in California (50,000 square feet); Declaration of Gina A. Bibby in Support of Hi-Tech's Motions, Ex. A (Declaration of Gary April ("April Decl.")) ¶¶ 6, 7, 8, 9, 11, 12 (asserting that Hi-Tech: (1) has no facilities, employees, real property, bank accounts, or subsidiaries in California; (2) is not registered with the California Secretary of State to do business in California; (3) has not manufactured or packaged its accused product in California; and (4) has not directly advertised its accused product in California); Declaration of Laura Hastings in support of Maybelline and SoftSheen ("Hastings Decl.") ¶¶ 10-21 (asserting that Maybelline and SoftSheen have no distribution warehouses or manufacturing facilities in the Northern District of California and that they employ approximately 1,000 employees total at the L'Oreal USA headquarters in New York and an additional 3,500 employees in New Jersey); Declaration of Timothy Connors in Support of Medtech's Motions ("Connors Decl.") ¶¶ 7-9 (stating that all of Medtech's operations including sales, marketing and legal are managed from New York, all contracts for the manufacture of the concerned products are negotiated by employees in New York, all decisions regarding product packaging and design are made by management in New York, and that MedTech has one employee located in California who services accounts in and outside of California, but that he is located outside of this District in Mission Viejo, California); Declaration of Richard McMahon in Support of Sunstar's Motions ("McMahon Decl.") ¶¶ 4-15 (claiming that Sunstar's corporate headquarters, sole distribution facility, sole manufacturing facility, and advertising staff are located in Illinois and asserting that to the best of his knowledge "Sunstar has always had minimal contact with the State of California" and estimating that "less than 13% of its total annual sales are to wholesalers and retailers in California.").

Defendants also contend that Plaintiff's contacts with the Northern District of California are slim and entitled to little weight because San Francisco Technology Inc. was created in July 2009 for the sole purpose of litigating cases such as the instant action. *See In re Zimmer*

*Holdings, Inc.*, — F.3d —, 2010 WL 2553580, at *3 (Fed. Cir. 2010) (applying the Fifth

Circuit's factors for establishing *forum non conveniens* and concluding that when the realities of

the case make it clear that a district is convenient only for a party's litigation counsel that this is

accorded no weight).  Plaintiff does not disagree with Defendants' assertion that it was created

principally to litigate actions such as this one or their argument that its contacts in this district

should be accorded little weight.  While *Zimmer* does not address the precise factual scenario

here – a plaintiff that appears to be an entity created by its attorney solely for the purpose of

litigation and a forum selected by that plaintiff solely for its attorney's convenience – the basis

upon which the Federal Circuit reached its conclusion in *Zimmer* appears to apply equally.  The

Court concludes that this factor weighs in favor of Defendants, as their respective contacts with

California are dwarfed by their contacts with the forums to which they move to transfer.

### 5. Contacts relating to the plaintiff's claim for relief in the chosen forum

Liability under 25 U.S.C. § 292 arises from "(1) a marking importing that an object is

patented (2) falsely affixed to (3) an unpatented article (4) with intent to deceive the public."

*Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1351 (Fed. Cir. 2005).

Accordingly, the markings on the concerned products and Defendants' intention with respect to

marking the products with expired patents are the central material facts that give rise to

Plaintiff's claim for relief.  Defendants present undisputed evidence that their products are

manufactured outside of the Northern District of California and that the persons making the

decisions to affix the allegedly expired patents to the concerned products also are located outside

of the Northern District of California.  *See* McMahon Decl. ¶ 12 ("Sunstar has no employees

located in California that have any decision making authority regarding Sunstar manufacturing,

use of patent numbers in packaging/advertising and/or patents (product development)."); *id.* ¶ 5

("Sunstar does not manufacture or package any of its products outside of Chicago, Illinois);

Connors Decl. ¶¶ 6-8 (asserting that the concerned products previously were manufactured in

Georgia and now are produced in Indiana and that "decisions regarding United States product

packaging and design are made by Medtech's management in its Irvington[, New York]

headquarters."); April Decl. ¶ 11, 14 (asserting that Hi-Tech's concerned product was

16

manufactured and packaged for Hi-Tech in Ontario, Canada and that "Hi-Tech's patent marking decisions and activities all originated in New York."); Hastings Decl. ¶ 17 ("All employees with knowledge of the [Maybeline and SoftSheen] decisions in the design and creation of packaging artwork, including patent numbers to be listed, on initial launch of new products, are located in either New York or Clark, New Jersey). While Plaintiff concedes that this factor weighs in favor of transfer, it requests that the Court grant it an opportunity to conduct discovery into the sales of the accused products prior to any ruling on the instant motions. The Court concludes that discovery of such facts would not affect its analysis, and that this factor weighs strongly in favor of transfer.

### 6. Differences in the costs of litigation in the two forums

Defendants contend that the necessary witnesses and evidence are located in the district to which they request the claims against them be transferred and that the cost of litigation is greater in this district. Although Plaintiff does not dispute these assertions, it argues that because most of the Defendants are large companies they are able to absorb easily the small additional cost of litigating in California as compared to their home states. Plaintiff contends that as a one-person company it lacks the resources to send its sole employee across the country on multiple occasions to attend hearings and trials. Mount Decl. ¶ 3. However, Plaintiff's claimed hardship appears to be of its own making. Plaintiff initiated the instant action against twenty-one improperly joined and unrelated companies. It is only because Plaintiff joined so many Defendants that it now is in the position to assert that the transfer of its claims against six of the Defendants would cause it hardship.[12]

Plaintiff also attempts to argue that judicial economy weighs against transferring the claims against the eight moving Defendants. Plaintiff directs the Court's attention to *IP Co. v. Oncor Electric Delivery, Co., LLC, et al.* No. 2:09-CV-37, slip. op. at 8 (E.D. Tex. Aug. 3, 2009)

---

[12]   Medtech notes that Dan Mount, Plaintiff's sole employee, President, CEO, and senior partner in the firm representing Plaintiff, describes himself on his firm's website as "a frequent traveler to Asia for business and pleasure" who is also a licensed pilot. *See* http://www.mount.com/index.cfm?page=attorney&pageid=85&bio=7&languageid_select=.

1   (concluding that judicial economy weighed against transfer because "a situation in which two

2   cases involving precisely the same issues are simultaneously pending in different District Courts

3   leads to wastefulness of time, energy, and money that § 1404(a) was designed to prevent."),

4   quoting *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)(citation omitted).

5   However, *IP Co.* was a patent infringement action in which the same patent was asserted against

6   all five defendants, and there were genuine common issues of fact and a genuine risk of

7   duplicative discovery.  Accordingly, this factor weighs in favor of transfer.[13]

### 7. Availability of compulsory process to compel attendance of unwilling non-party witnesses

9       With rare exception, the Court's subpoena power only extends outside of this district if

10  the place of service is "within 100 miles of the place specified for the deposition, hearing, trial,

11  production or inspection." Fed. R. Civ. P. 45(b)(2).  Plaintiff argues that defendants who falsely

12  mark their products with expired patents often seek to avoid liability by suggesting that the date

13  when a product is found on a retail shelf does not suggest that it was marked with the expired

14  patent after its expiration.  Plaintiff argues that thirteen unidentified employees from the local

15  Walgreens and Target stores have relevant "knowledge about the frequency with which their

16  stores receive shipments of the defendants' products," "knowledge about their stores' sales of the

17  defendants' accused products and their recommendations of the defendants' accused products to

18  the public," and "the volumes of the defendants' accused products sold in their stores and in

19  other [] stores in this region, as well as the time that typically elapses from when they receive

20  such products until those products are sold."  Declaration of Dan Fingerman ¶ 2 (identifying

21  generally "at least two store managers at two different Walgreens stores in San Jose, California

22  and a manager of a third Walgreens store in Cupertino, California," "at least two stock clerks at

---

24      [13]  Church & Dwight currently is defending a false marking case in another district court.
25  Church & Dwight contends that transferring Plaintiff's claims against it to the Eastern District of
    Pennsylvania would promote judicial economy because there already is a pending claim against it
26  in that district (*Hirschhorn v. Church & Dwight Co.* E.D. Pa. no. 10-cv-1156) concerning some
    of the same Church & Dwight patents and products at issue here.  Plaintiff does not address this
27  argument.  The Court concludes that these facts support a determination that this factor weighs in
    favor of transfer.
28

18

those two San Jose Walgreens stores," "at least three pharmacists at those two San Jose Walgreens stores," "two store managers of two different Target stores in San Jose and a third store manager at a Target store in Cupertino," and "at least two stock clerks in those two San Jose Target stores."). These proposed witnesses would not be subject to compulsory process in any of the districts to which transfer is sought by the moving Defendants.

This argument is unpersuasive at best and insincere at worst. First, evidence of high volume sales with rapid turnover at retail stores is not necessarily relevant with respect to a number of the Defendants. Second, Plaintiff may seek discovery with respect to the value and sales of Defendants' products directly from Defendants, making testimony from these unidentified witnesses unnecessary. Third, even if Plaintiff did have a genuine need for the testimony of thirteen store clerks to prove its allegations about Defendants' products, it could obtain the testimony of clerks from any "national retail chain store" in the country. *See contra Shalaby v. Newell Rubbermaid, Inc.*, No. C06-07026 MJJ, 2007 WL 3144357, at *5 (N.D. Cal. Oct. 24, 2007) (considering effect of third party witnesses only after determining that they were "critical"); *International Broth. of Teamsters v. North American Airlines*, No. C05-0126 THE, 2005 WL 947083, at *4 (N.D. Cal. Apr. 20, 2005) (emphasis added) (considering the *necessity* of the identified witnesses in analyzing this factor). Defendants do not argue that they will be forced to compel attendance of unwilling non-party witnesses. Rather, they claim that the witnesses with information relevant to Plaintiff's claims are their own employees who have knowledge related to the marking of the products at issue and their intent when affixing the allegedly false marks. Accordingly, this factor appears to be neutral.

### 8. Ease of access to sources of proof

In considering this factor, the Ninth Circuit has held that a court must consider the importance of the witnesses in the case, not just their number and location. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) ("[T]he court should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum"). Here, each of the moving Defendants demonstrates that its principal place of business or manufacturing headquarters and location of its employees

19

with knowledge relevant to the marking of the concerned products and the intent of the company in affixing the allegedly expired patents are outside of this district and in or close to the district to which they request the action be transferred.[14]   *See* McMahon Decl. ¶¶ 5, 10, 12 (asserting that all of its products are manufactured and packaged in Illinois and that all persons likely to have information about the present case who would be called to testify at trial are in Illinois); Connors Decl. ¶¶ 6, 8 (asserting that the products previously were manufactured in Georgia and now are produced in Indiana, but that "decisions regarding United States product packaging and design are made by Medtech's management in its Irvington[, New York] headquarters."); April Decl. ¶ 11, 14 (asserting that Hi-Tech's concerned product was manufactured and packaged for Hi-Tech in Ontario, Canada and that "Hi-Tech's patent marking decisions and activities all originated in New York."); Hastings Decl. ¶ 17 ("All employees with knowledge of the [Maybeline and Softsheen] decisions in the design and creation of packaging artwork, including patent numbers to be listed, on initial launch of new products, are located in either New York or Clark, New Jersey).

Plaintiff's sole argument with respect to this factor is that physical evidence such as "samples of the defendants' accused products as well as the packaging, labels, and advertising associated with those products has been identified in San Jose and Cupertino." Opposition to Motions to Transfer at 7. However, as Defendants suggest, the same physical evidence can likely be recovered through discovery should the instant action reach that stage of litigation. Moreover, it would not be burdensome for Plaintiff to ship or bring its samples of the Defendants' products to the relevant district. Accordingly, the location of documents and witnesses weighs heavily in favor of transfer.

### 9. Relevant public policy of the forum state, if any.

Plaintiff and the majority of Defendants do not address the last factor considered in *Jones*, which is the public policy of the forum state, and in any event the factor is not relevant to the

---

[14]   The one partial exception is Church & Dwight, which acknowledges that its headquarters is in New Jersey but asserts that its largest warehouse is in Pennsylvania and that the Eastern District of Pennsylvania is a more convenient forum. Herold Decl., Ex. B.

Case Number 10-CV-00966 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)

majority of Defendants. However, Church & Dwight contends that California's public policy of judicial economy and the avoidance of inconsistent judgments favors transfer. *People v. Garcia*, 39 Cal.4th 1070, 1079 (2006) (citation omitted) (observing that one traditional public policy served by the collateral estoppel doctrine is to "promote judicial economy by minimizing repetitive litigation"); *Murphy v. Murphy*, 78 Cal.Rptr.3d 784, 806 (Ct. App. 2008) (identifying another public policy purpose of collateral estoppel as "prevent[ing] inconsistent judgments which undermine the integrity of the judicial system."). These policies are relevant to Church & Dwight because it currently is defending a pending action in the Eastern District of Pennsylvania. Church & Dwight argues that if the claims against it are not transferred, both this Court and the court in Pennsylvania may expend resources seeking to resolve the same factual and legal issues and there is a risk of inconsistent findings of fact and inconsistent judgments. Accordingly, this factor weighs in favor of Church & Dwight's motion.

Taking all of the relevant factors into consideration, the Court concludes that the "convenience" and "justice" factors tip strongly in favor of granting each of the instant motions to transfer.

## VI. ORDER

Good cause therefor appearing, this action is hereby severed as to each and every separate defendant.

1. The claims brought by Plaintiff against Hi-Tech Pharmacal Co. Inc. are hereby transferred to the Eastern District of New York.

2. The claims brought by Plaintiff against Medtech Products Inc. are hereby transferred to the Southern District of New York.

3. The claims brought by Plaintiff against Sunstar Americas, Inc. are hereby transferred to the Northern District of Illinois.

4. The claims brought by Plaintiff against Church & Dwight Co. Inc. are hereby transferred to the Eastern District of Pennsylvania.

5. The claims brought by Plaintiff against Maybelline LLC and SoftSheen-Carson, LLC are hereby transferred to the Southern District of New York.

21

6. The Clerk shall open new case numbers for each of the following, all to be assigned to the undersigned, and shall file a copy of the complaint and this order in each.

      a. *San Francisco Technology, Inc. v. Bayer Corporation*

      b. *San Francisco Technology, Inc. v. Bright Image Corporation*

      c. *San Francisco Technology, Inc. v. GlaxoSmithKline LLC*

      d. *San Francisco Technology, Inc. v. McNeil-PPC, Inc.*

      e. *San Francisco Technology, Inc. v. Playtex Products Inc.*

      f. *San Francisco Technology, Inc. v. Sun Products Corporation*

7. Each of the actions remaining in this district shall be stayed, pending the decision of the Federal Circuit in *Stauffer* and until further order of the Court. The parties shall notify the Court promptly when a decision in *Stauffer* issues.

8. Except as to Defendant Exergen, the motions to dismiss are terminated, without prejudice. As to Exergen, the motion to dismiss is granted.

**IT IS SO ORDERED.**

DATED: 7/19/2010

                            _____
                            JEREMY FOGEL
                            United States District Judge__

Case Number 10-CV-00966 JF (PVT)
ORDER RE PENDING MOTIONS
(JFLC1)